[965 NE2d 939, 942 NYS2d 437]

# Thomas H., Appellant, v Paul B. et al., Respondents.

Argued January 9, 2012; decided February 21, 2012

**POINTS OF COUNSEL**

*Law Office of Mickey A. Steiman*, Hyde Park (*Mickey A. Steiman* of counsel), and *Robert N. Palmer*, Poughkeepsie, for appellant. I. The decision and order of the Appellate Division is inconsistent with clear principles of defamation jurisprudence requiring critical analysis of claims of non-actionable expression. (*Steinhilber v Alphonse*, 68 NY2d 283; *Mann v Abel*, 10 NY3d 271; *Gross v New York Times Co.*, 82 NY2d 146; *Silverman v Clark*, 35 AD3d 1; *Vengroff v Coyle*, 231 AD2d 624.) II. The Appellate Division erroneously engaged in factual issue determination in concluding defendants' alleged statements constituted statements of opinion and not of fact. (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395; *Kolivas v Kirchoff*, 14 AD3d 493; *Judice v DeAngelo*, 272 AD2d 583; *Andre v Pomeroy*, 35 NY2d 361; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851; *Zuckerman v City of New York*, 49 NY2d 557; *Alvarez v Prospect Hosp.*, 68 NY2d 320; *Rodriguez v OD&P Constr.*, 194 Misc 2d 284; *Director, Office of Workers' Compensation Programs v Greenwich Collieries*, 512 US 267; *300 E. 34th St. Co. v Habeeb*, 248 AD2d 50.)

*Murphy & Lambiase*, Goshen (*George A. Smith* of counsel), for respondents. I. The purported statements are not actionable because even if they were made, they were nothing more than a truthful recitation of defendants' daughter's allegations against Thomas H. (*Golub v Enquirer/Star Group*, 89 NY2d 1074; *Stephan v Cawley*, 24 Misc 3d 1204[A], 2009 NY Slip Op 51248[U]; *Tourge v City of Albany*, 285 AD2d 785; *Vengroff v Coyle*, 231 AD2d 624; *Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369; *Jung Hee Lee Han v State of New York*, 186 AD2d 536; *Mann v Abel*, 10 NY3d 271; *Brian v Richardson*, 87 NY2d

46.) II. Hyperbole, imaginative speech and opinion are all nonactionable. (*Milkovich v Lorain Journal Co.*, 497 US 1; *Letter Carriers v Austin*, 418 US 264; *Immuno AG. v Moor-Jankowski*, 77 NY2d 235; *Steinhilber v Alphonse*, 68 NY2d 283; *Kamalian v Reader's Digest Assn., Inc.*, 29 AD3d 527; *Brian v Richardson*, 87 NY2d 46; *Mann v Abel*, 10 NY3d 271; *Balderman v American Broadcasting Cos.*, 292 AD2d 67; *Parks v Steinbrenner*, 115 AD2d 395; *Zion v NYP Holdings, Inc.*, 18 AD3d 376.) III. Statements which are not actionable do not become actionable because in another context they would be slander per se. (*Liberman v Gelstein*, 80 NY2d 429; *Cavallaro v Pozzi*, 28 AD3d 1075; *McCullough v Certain Teed Prods. Corp.*, 70 AD2d 771; *Tourge v City of Albany*, 285 AD2d 785; *Jordan v Lewis*, 20 AD2d 773; *Brian v Richardson*, 87 NY2d 46; *Arrigoni v Velella*, 110 AD2d 601; *Aronson v Wiersma*, 65 NY2d 592.)

**OPINION OF THE COURT**

GRAFFEO, J.

On this record, we hold that defendants are not entitled to summary judgment because they failed to establish as a matter of law that they did not defame plaintiff.

Plaintiff Thomas H. and his wife, Karen, are acquainted with defendants Paul and Nancy B. The couples were introduced by one of Karen's sisters and they occasionally spent time together at a residence in Vermont. Defendants' young son and daughter would join them on these excursions.

In early 2005, defendants' daughter revealed to her parents that plaintiff had raped and molested her at the Vermont residence in February 2002 and 2004, when she was 10 and 12 years old. After hearing about these incidents, Paul brought his daughter to speak with Vermont law enforcement officials and a police report was prepared. Plaintiff was never charged with a crime in connection with these allegations.

Defendants, along with Karen's two sisters, decided to notify Karen about her husband's alleged actions and inform her that defendants would soon be filing a civil suit against her husband. In February 2006, all four went to Karen's apartment in Manhattan to convey this information. What was said during this meeting is sharply disputed by the parties.

In his pretrial deposition, Paul could not remember what he specifically discussed with Karen but recalled that the conversation focused on his daughter's accusations against Karen's husband. He also could not confirm that he was the person who

stated that plaintiff had "raped" the child, though he did admit to telling Karen that if he had a gun, he would have shot her husband.

Nancy testified that, although she did not tell Karen that her husband had raped the child, she thought that someone else made such a declaration at least once during the discussion. Another individual who was present could not remember the precise details of what occurred but testified that the general topic of discussion was that defendants' daughter had accused plaintiff of sexual abuse and molestation.

Contrary to defendants' version of the exchange, Karen claimed that as soon as she opened her door to the visitors, someone declared "It's Tom, it's Tom . . . He raped [the girl]." She indicated that it was Paul who stated that "Tom had raped [the girl] twice up in Vermont" and that Nancy had described the incidents to her as follows:

> "That in 2002 [plaintiff] waited until everybody was asleep, snuck out of his bedroom, went into the bedroom where [the girl] was sleeping, picked her up, carried her back to his bedroom, tried to have sexual relations with [her] and couldn't because he couldn't maintain an erection, then stuck his finger in her vagina and then called her a bitch and threatened her and said don't tell anybody about this . . . [a]nd then brought her back to her bedroom.

> "[I]n February 2004 [plaintiff] . . . got [the girl] and brought [her] back into his bedroom and this time had sexual intercourse with her and slammed her up against a wall and used profanities with her again and threatened her again and then brought her back into her bedroom."

According to Karen, these were Nancy's direct quotes and she understood that the statements made by defendants were based on their daughter's allegations. However, she did not believe that her husband had sexually assaulted the child.

Plaintiff adamantly denied that he had sexual contact with defendants' daughter and responded to these charges by commencing this action for defamation. The theory of the complaint is that, at the meeting and on "numerous occasions" thereafter, defendants falsely and maliciously stated that plaintiff had

raped and molested defendants' daughter, and that the individuals who heard those statements believed that defendants "charge[d] plaintiff with the felony crimes of rape and child molestation." After depositions were conducted, defendants moved for summary judgment, contending that even if they made the statements that were attributed to them, those utterances were not actionable because they had truthfully relayed their daughter's accusations and merely expressed their belief in her veracity.

Supreme Court denied defendants' motion, finding triable issues of fact based on the conflicting testimony of the parties. The Appellate Division reversed and granted summary judgment to defendants (74 AD3d 1283 [2d Dept 2010]). The court concluded that the "alleged statements constituted statements of opinion, and not of fact" (*id.* at 1284). We granted leave to appeal (15 NY3d 715 [2010]) and now reverse.

Making a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace constitutes defamation (*see e.g. Geraci v Probst*, 15 NY3d 336, 344 [2010]; *Foster v Churchill*, 87 NY2d 744, 751 [1996]). Generally, only statements of fact can be defamatory because statements of pure opinion cannot be proven untrue (*see e.g. Brian v Richardson*, 87 NY2d 46, 51 [1995]).[1] A verbal utterance that inaccurately accuses a person of a serious crime can be slander per se (*see Liberman v Gelstein*, 80 NY2d 429, 435 [1992]).

It is often difficult to distinguish an actionable statement of fact from a protected statement of opinion (*see Mann v Abel*, 10 NY3d 271, 276 [2008]). This is a task that courts must perform by examining three factors: (1) whether the allegedly defamatory words have a "precise meaning" that is "readily understood"; (2) whether the statement can be proven as true or false; and (3) "whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact" (*Brian v Richardson*, 87 NY2d at 51 [internal quotation marks omitted]; *see Mann v Abel*, 10 NY3d at 276; *Steinhilber v Alphonse*, 68 NY2d at 292).

---

1. Some opinions that are not accompanied by the facts on which they are based may qualify as defamatory under certain circumstances (*see Gross v New York Times Co.*, 82 NY2d 146, 153-154 [1993]; *Steinhilber v Alphonse*, 68 NY2d 283, 289-290 [1986]).

Even when an accusation involves serious criminal conduct, differentiating between fact and opinion is not necessarily an easy endeavor. At first blush, a statement such as "plaintiff is a thief" certainly appears capable of being proven true or false. But the overall context in which such words are used may cloud their potentially defamatory nature. As we explained in *Gross* (82 NY2d at 155), using "thief" to refer to the intentional taking of another person's property is a direct factual accusation of criminal conduct that is likely actionable. In that context, the defamatory nature of the statement cannot be immunized by pairing it with "I believe" the person is a thief. But if the word "thief" is used in the symbolic sense to suggest that someone's "heart was stolen," it lacks a criminal connotation and instead conveys "that something other than an objective fact is being asserted" (*id.*). Context, therefore, is often the key consideration in categorizing a statement as fact or opinion (*see generally Immuno AG. v Moor-Jankowski*, 77 NY2d 235, 254 [1991]).

Based on the conflicting recollections in this case, it is impossible to decipher exactly what was said by whom and the precise context in which the statements were made. Paul asserted that, for the most part, he could not recall his own statements but that he merely spoke about what his daughter had told him. Nancy similarly testified that the conversation focused on her daughter's accusations and she acknowledged that someone accused plaintiff of committing sexual assault. Plaintiff's wife, in stark contrast, contended that both defendants characterized her husband as a rapist and child molester, and claimed that Nancy delineated precisely what acts plaintiff engaged in and the nature of the statements that plaintiff made to her daughter.

In light of these factual discrepancies, defendants have not met their burden of demonstrating their entitlement to summary judgment. Assuming that the recollections of plaintiff's wife are accurate, her version of the facts would support the conclusion that defendants may have defamed plaintiff. Unqualified statements attributed to defendants that plaintiff sexually assaulted their underage daughter on two occasions in Vermont, accompanied by specific details of plaintiff's threats and actions during the incidents, tends to weigh the relevant factors in favor of viewing defendants' alleged communications as actionable statements of fact: (1) the precise meaning of the utterances is that plaintiff raped and molested a child at a specific place during two encounters; (2) the statements can be proven

true or false since plaintiff either did or did not commit the acts; and (3) the overall context in which the utterances were made is indicative of factual assertions. This includes Paul's statement that he would have shot plaintiff if a gun was available, defendants' belief that their daughter had been sexually assaulted by plaintiff and defendants' intent to sue plaintiff for what he allegedly did to their daughter. Under these circumstances, a reasonable listener would have understood that defendants intended to label plaintiff as a child rapist. Hence, the statements would be actionable even if they were couched in the form of an opinion ("I think plaintiff sexually assaulted my child"), rather than fact ("plaintiff sexually assaulted my child") (*see Gross*, 82 NY2d at 155). And although plaintiff's wife realized that defendants' purported statements were derived from what their daughter told them, that is not determinative because "the fact that a particular accusation originated with a different source does not automatically furnish a license for others to repeat or publish it without regard to its accuracy or defamatory character" (*Brian v Richardson*, 87 NY2d at 54).[2] Consequently, we conclude that defendants' motion for summary judgment must be denied.

As a final matter, it should be noted that defendants did not argue in their summary judgment motion that their statements were immunized by a qualified privilege. "Generally, a statement is subject to a qualified privilege when it is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned" (*Rosenberg v MetLife, Inc.*, 8 NY3d 359, 365 [2007] [internal quotation marks omitted]; *see e.g. Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 98 NY2d 435, 445 [2002]; *Liberman v Gelstein*, 80 NY2d at 437). A communication protected by such a privilege is not actionable unless the plaintiff proves that it was uttered with malice—i.e., "spite or a knowing or reckless disregard of a statement's falsity" (*Rosenberg*, 8 NY3d at 365). In the current procedural posture of this appeal, we cannot consider, and do not decide,

---

2. In *Brian*, the author of an article that appeared on the editorial page of a newspaper stated that he found certain factual claims about a matter of public concern to be credible, while disclosing the basis for that belief. In concluding that this was a communication of opinion (*see* 87 NY2d at 53), we made clear that a statement does not necessarily cease to be factual simply because the speaker attributes it to a third party (*see e.g. Gross*, 82 NY2d at 150).

whether the qualified privilege rule applies in a situation like this arising from the disclosure of sexual assault allegations by the parents of a child victim to the spouse of the accused offender, with whom the parents are acquainted.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the order of Supreme Court reinstated.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.