================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 145
Robert Davis, et al.,
            Appellants,
        v.
James Boeheim, et al.,
            Respondents.


                Mariann Meier Wang, for appellants.
                Helen V. Cantwell, for respondents.


RIVERA, J.:

        On this appeal from a pre-answer dismissal of

plaintiffs' defamation action, we conclude that the challenged

statements are reasonably susceptible of a defamatory

connotation, and not otherwise privileged, nonactionable "pure

- 1 -

opinion."  Therefore, we reverse the Appellate Division.


                              I.

          Plaintiffs Robert Davis and his step-brother Michael
Lang sued defendants Syracuse University and James Boeheim, the
University's head basketball coach, for defamation based on
statements by Boeheim made in response to Davis and Lang's
allegations of sexual molestation by Bernie Fine, Boeheim's long-
time friend and the team's associate coach.  Plaintiffs claimed
that Fine used his position and authority within the University's
basketball program to gain access to and control over Davis and
Lang for purposes of sexually molesting them.

          According to plaintiffs, from the time Davis and Lang
were children in the 1980s, Fine lured them with opportunities to
attend the games and assist the team as "ball boys."  For years
the sexual abuse continued, on and off campus, on team trips away
from the University, in Fine's car and in his home.  Davis
alleged that in his case the abuse continued for almost two
decades, commencing when he was about 11 years old.  Plaintiffs
further alleged that Boeheim had observed Davis with Fine at
practices, at games, and on trips with the team, including once
in Fine's hotel room during the 1987 NCAA Final Four.

          The plaintiffs did not make their claims known or
public until they were adults, years after the abuse ended.  In
2002, Davis went to the Syracuse Police Department, but the

Department failed to investigate or take any action on his allegations, informing him that the statute of limitations for child sexual abuse had expired.  Davis decided to go to the media, and reported the abuse to the Syracuse Post-Standard, a daily newspaper servicing the Syracuse area, and ESPN, a national sports television channel.  In 2003, ESPN interviewed Davis but failed to publicize his allegations.

In September 2005, Davis reported the sexual abuse to the University's new Chancellor.  At the University's request, Davis met with a University lawyer and provided names of individuals who Davis claimed could corroborate his allegations of abuse.  A few months later the University informed Davis by letter that it had concluded his allegations were unfounded and had closed the matter.

Plaintiffs' claims became public in 2011 after unrelated allegations by other victims of sexual abuse surfaced against another coach at another well known university.  In that year, similar claims surfaced of sexual abuse of multiple victims by former Penn State University assistant football coach Jerry Sandusky.  As with the plaintiffs' claims against Fine, the Penn State sexual abuse scandal involved allegations that Sandusky had used the University's football program in order to gain access to underage victims.  Penn State's head football coach, Joe Paterno, was alleged to have covered up the abuse.

The Penn State scandal renewed national and local media

interest in plaintiffs' allegations.  Within two weeks of the
initial breaking news coverage of the Penn State story, and as
the media focus on the Penn State allegations continued, ESPN
issued a news report about the allegations against Fine.  The
story also relayed Davis' statement that Boeheim saw Davis lying
on Fine's hotel room bed during the 1987 NCAA Final Four.

The day after the ESPN story, the University released a
statement in which it described its 2005 four-month investigation
into Davis' allegations.  The University stated that it had
interviewed persons named by Davis, but was unable to corroborate
the claims.  The University further stated that it would have
acted had it found any evidence or corroboration of the
allegations in 2005.

The same day the ESPN story broke, and before the
University's statement went public, Boeheim issued a one-
paragraph statement, released by the Syracuse University news
service, in which he too announced that the University had
investigated the allegations and had concluded they were
unfounded.  Boeheim further declared that "Bernie [Fine] has my
full support," and that he had known Fine for over 40 years and
had "never seen or witnessed anything to suggest that [Fine]
would be involved in any of the activities alleged."  Boeheim
stated that if he had "seen or suspected anything, I would have
taken action."

Boeheim made several other statements to reporters,

which were quoted in the print and online versions of the New York Times, on the Syracuse Post Standard's website Syracuse.com, on SportingNews.com, and on ESPN.com. In these statements, Boeheim reasserted his support for Fine and his denial of any knowledge of the claimed events as described by Davis. He also called Davis and Lang liars, and stated that their allegations were financially motivated.

Davis and Lang commenced this action against Boeheim and the University for defamation, claiming that several of Boeheim's statements to ESPN, the Post-Standard, and the New York Times, were false and defamatory, and had caused them economic, emotional and reputational harm. The University and Boeheim filed a motion to dismiss pursuant to CPLR 3211 (a) (7), on the grounds that the statements were not defamatory as a matter of law because they constituted nonactionable opinion, not facts. Supreme Court granted the motion concluding that a reasonable reader would conclude that Boeheim's statements were "a biased and personal opinion on the accusations against Bernie Fine, not fact."

The Appellate Division affirmed in a split 3-2 decision. The majority concluded that although Boeheim's statements that Davis fabricated allegations and was motivated by financial gain had certain factual elements, based on "the context of the communication as a whole, as well as its tone and apparent purpose," and "the over-all context in which the

assertions were made," a reasonable reader would have believed that the challenged statements were conveying opinion and not facts (Davis v Boeheim, 110 AD3d 1431, 1433 [4th Dept 2013]). The dissent concluded that dismissal on a pre-answer motion to dismiss was error because Boeheim's statements that Davis was lying about Fine to get money, and that he had done so in the past, constituted opinion that implies a basis in facts not disclosed to the reader or listener, and thus constituted actionable "mixed opinion."

Davis and Lang contend that the Appellate Division erred because the complaint sufficiently pleads a cause of action for defamation against Boeheim and the University based on statements that are defamatory facts or, alternatively, mixed opinion. We agree the complaint is sufficient to survive the motion to dismiss, and reverse the Appellate Division.


                              II.

This appeal comes to us on a pre-answer motion to dismiss pursuant to CPLR 3211 (a) (7), a procedural posture which requires that "we accept as true each and every allegation made by plaintiff and limit our inquiry to the legal sufficiency of plaintiff's claim" (Silsdorf v Levine, 59 NY2d 8, 12 [1983]; see also Armstrong v Simon & Schuster, Inc., 85 NY2d 373, 379 [1995]). Unlike on a motion for summary judgment where the court "searches the record and assesses the sufficiency of the parties'

evidence," on a motion to dismiss the court "merely examines the adequacy of the pleadings" (State v Barclays Bank of New York, N.A., 151 AD2d 19, 21 [3d Dept 1989], affd 76 NY2d 533 [1990]). In determining the sufficiency of a defamation pleading, we consider "whether the contested statements are reasonably susceptible of a defamatory connotation" (Armstrong, 85 NY2d at 380, citing Weiner v Doubleday & Co., 74 NY2d 586, 593 [1989]). As we have previously stated, "[i]f, upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to sufficiently state a cause of action" (Silsdorf, 59 NY2d at 12 [1983], citing 219 Broadway Corp. v Alexander's, Inc., 46 NY2d 506, 509 [1979]). We apply this liberal standard fully aware that permitting litigation to proceed to discovery carries the risk of potentially chilling free speech, but do so because, as we have previously stated, "we recognize as well a plaintiff's right to seek redress, and not have the courthouse doors closed at the very inception of an action, where the pleading meets the minimal standard necessary to resist dismissal of the complaint" (Armstrong, 85 NY2d at 379).

In order for the challenged statements to be susceptible of a defamatory connotation, they must come within the well established categories of actionable communications. Thus, a false statement "that tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace constitutes

defamation" (Thomas H. v Paul B., 18 NY3d 580, 584 [2012]).

"Since falsity is a necessary element of a defamation cause of

action and only 'facts' are capable of being proven false, 'only

statements alleging facts can properly be the subject of a

defamation action'" (Gross v New York Times, 82 NY2d 146, 152-153

[1993], citing 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130,

139 [1992] and Immuno AG. v Moor-Jankowski, 74 NY2d 548, 254

[1989]).

        A defamatory statement of fact is in contrast to "pure

opinion" which under our laws is not actionable because

"[e]xpressions of opinion, as opposed to assertions of fact, are

deemed privileged and, no matter how offensive, cannot be the

subject of an action for defamation" (Mann v Abel, 10 NY3d 271,

276 [2012]).  For, "[h]owever pernicious an opinion may seem, we

depend for its correction not on the conscience of judges and

juries but on the competition of other ideas" (Steinhilber v

Alphonse, 68 NY2d 283, 289 [1986], citing Gertz v Robert Welch,

Inc., 418 US 323, 339-340 [1974]).  A pure opinion may take one

of two forms.  It may be "a statement of opinion which is

accompanied by a recitation of the facts upon which it is based,"

or it may be "an opinion not accompanied by such a factual

recitation" so long as "it does not imply that it is based upon

undisclosed facts" (Steinhilber, 68 NY2d at 289, citing Ollman v

Evans, 750 F2d 970, 976 [DC Cir 1984]).

        While a pure opinion cannot be the subject of a

defamation claim, an opinion that "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, [] is a 'mixed opinion' and is actionable" (Steinhilber, 68 NY2d at 289, citing Hotchner v Castillo-Puche, 551 F2d 910, 913 [2d Cir], cert denied sub nom. Hotchner v Doubleday & Co., 434 US 834 and Cianci v New Times Pub. Co., 639 F2d 54, 64, 65 [2d Cir]).  This requirement that the facts upon which the opinion is based are known "ensure[s] that the reader has the opportunity to assess the basis upon which the opinion was reached in order to draw [the reader's] own conclusions concerning its validity" (Silsdorf, 59 NY2d at 13-14).  What differentiates an actionable mixed opinion from a privileged, pure opinion is "the implication that the speaker knows certain facts, unknown to [the] audience, which support [the speaker's] opinion and are detrimental to the person" being discussed (Steinhilber, 68 NY2d at 290, citing Rand v New York Times Co., 75 AD2d 417, 422 and Silsdorf, 59 NY2d at 14).

Distinguishing between fact and opinion is a question of law for the courts, to be decided based on "what the average person hearing or reading the communication would take it to mean" (Steinhilber, 68 NY2d at 290; Mann, 10 NY3d at 276 ["[w]hether a particular statement constitutes an opinion or objective fact is a question of law"], citing Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 381 [1977], cert denied 434 US 969 [1977]).  "The dispositive inquiry ... is 'whether a

reasonable [reader] could have concluded that [the statements were] conveying facts about the plaintiff" (Gross, 82 NY2d at 152 citing 600 W. 115th St. Corp., 80 NY2d at 139).

    We apply three factors in determining whether a reasonable reader would consider the statement connotes fact or nonactionable opinion: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact" (Mann, 10 NY3d at 276, quoting Brian, 87 NY2d at 51).

    The third factor "lends both depth and difficulty to the analysis" (Brian, 87 NY2d at 51), and requires that the court consider the content of the communication as a whole, its tone and apparent purpose (Brian, 87 NY2d at 51; Mann, 10 NY3d at 276, quoting Brian, 87 NY2d at 51).  Thus, we have adopted a holistic approach to this inquiry.  "Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the []

plaintiff'" (<u>Brian</u>, 87 NY2d at 51, citing <u>Immuno AG.</u>, 74 NY2d at 254, <u>Steinhilber</u>, 68 NY2d at 293; <u>Mann</u>, 10 NY3d at 276, <u>quoting</u> <u>Brian</u>, 87 NY2d at 51).


III.

In their complaint, Davis and Lang alleged that Boeheim made defamatory statements that they were liars seeking money. In support of their claim, they identified quotes from Boeheim in which he stated:

> (1) "This is alleged to have occurred ... what?  Twenty years ago?  Am I in the right neighborhood? ... So we are supposed to do what?  Stop the presses 26 years later? For a false allegation?  For what I absolutely believe is a false allegation?  I know [Davis is] lying about me seeing him in his hotel room.  That's a lie.  If he's going to tell one lie, I'm sure there's a few more of them."

> (2) "The Penn State thing came out and the kid behind this is trying to get money.  He's tried before.  And now he's trying again ....  That's what this is about.  Money."

> (3) "It is a bunch of a thousand lies that [Davis] has told ....  He supplied four names to the university that would corroborate his story.  None of them did ... there is only one side to this story.  He is lying." Boeheim continued, "I believe they saw what happened at Penn State, and they are using ESPN to get money.  That is what I believe."

> (4) "You don't think it is a little funny that his cousin (relative) is coming forward?"

> (5) Boeheim stated that the timing of Lang's decision to speak out about his abuse seemed

"a little suspicious."

Applying the aforementioned principles to this case, the first and second factors weigh in favor of finding that Boeheim's statements were factual assertions. With respect to the first factor, Boeheim used specific, easily understood language to communicate that Davis and Lang lied, their motive was financial gain, and Davis had made prior similar statements for the same reason. These are clear statements of the plaintiffs' actions and the driving force for their allegations against Fine. Consideration of the second factor similarly weighs in favor of treating Boeheim's statements as factual because the statements are capable of being proven true or false, as they concern whether plaintiffs made false sexual abuse allegations against Fine in order to get money, and whether Davis had made false statements in the past (see McNamee v Clemens, 762 F Supp 2d 584, 601 [EDNY 2011] [distinguishing general denials of accusations from specific statements that accuser "will be proven a liar and has lied in front of members of congress" and holding the latter actionable]). Moreover, they were not "rhetorical hyperbole rather than objective fact" (Ram v Moritt, 205 AD2d 516, 517 [2d Dept 1994]; see also Ind. Living Aids v Maxi-Aids, Inc., 981 F Supp 124, 128 [EDNY 1997] [epithet 'liar', in context, where it reflects a mere denial of accusations, was personal opinion and rhetorical hyperbole]). Our inquiry, however, does not rest on these two factors because the third

factor in the analysis "is often the key consideration in categorizing a statement as fact or opinion" (<u>Thomas H.</u>, 18 NY3d at 585, citing <u>Immuno AG.</u>, 77 NY2d at 254). It is this third factor that the parties vigorously dispute, and which we conclude establishes the sufficiency of plaintiffs' complaint.

Defendants contend that the context in which the statements were made leads inexorably to the conclusion that Boeheim's statements are nonactionable pure opinion. They argue that a reader would consider Boeheim's statements as an obvious and transparent effort to defend his long-time close friend and colleague against allegations of sexual abuse, as well as an effort to defend against suggestions that Boeheim knew about the alleged abuse and did nothing. They further argue that he specifically denied any special knowledge when he stated, "I know nothing" and "I really don't have any facts."

Essentially, defendants argue that because a reader could interpret the statement as pure opinion, the statement is as a consequence, nonactionable and was properly dismissed under CPLR 3211 (a) (7). However, on a motion to dismiss we consider whether any reading of the complaint supports the defamation claim. Thus, although "[i]t may well be that [the challenged statements] are subject to [defendants'] interpretation [] the motion to dismiss must be denied if the communication at issue, taking the words in their ordinary meaning and in context, is also susceptible to a defamatory connotation" (<u>Sweeney v</u>

Prisoners' Legal Services of New York, Inc., 146 AD2d 1, 4 [3d
Dept 1989], citing Carney v Memorial Hosp. & Nursing Home, 64
NY2d 770, 772 [1985] and Silsdorf, 59 NY2d at 12-13).  We find
this complaint to meet this minimum pleading requirement.

Here, Boeheim stated that Davis and Lang lied and did
so for monetary gain, and that Davis had done so in the past.
Boeheim's assertions that Davis previously made the same claims,
for the same purpose, communicated that Boeheim was relying on
undisclosed facts that would justify Boeheim's statements that
Davis and Lang were neither credible nor victims of sexual
abuse.[1]  That, as defendants argue, Boeheim denied knowledge of
facts, or prefaced some statements by saying "I believe", is
insufficient to transform his statements into nonactionable pure
opinion, because in context, a reasonable reader could view his
statements as supported by undisclosed facts despite these
denials (Thomas H., 18 NY3d at 586).

The context further suggests to the reader that Boeheim
spoke with authority, and that his statements were based on
facts.  Boeheim was a well respected, exalted member of the
University and the Syracuse community-at-large, and as head coach
of the team appeared well placed to have information about the
charges.  Boeheim's initial statement, which contained

_____

[1] Based on our conclusion that the complaint sufficiently
states a claim for defamation, we need not address whether
plaintiffs' alternative theory of mixed opinion based on
distorted facts was preserved below and properly before us.

information about the University's investigation, was released on
the School's website, confirming his status within the
University.  His statement contained information about Davis'
allegations and the University's investigation, which a reader
could understand was based on Boeheim's access to factual details
unavailable to the public, facts which supported his assertions
about Davis and his motive.  That Boeheim's statement was issued
prior to the University's first public statement about the
investigation, further suggests that Boeheim had access to
otherwise confidential information.  Moreover, Boeheim worked
with Fine for many years and claimed to "know" Davis from when
Davis was a child assisting the team and serving as a babysitter,
further suggesting that Boeheim had particular details upon which
he relied in asserting that the allegations were untrue.
In addition, Boeheim knowingly made these statements to reporters
during the media investigation and coverage of the plaintiffs'
allegations.  Those statements were then published in news-
related articles that described the allegations, comparing them
to the Penn State victims' claims, and discussing the impact of
the sexual abuse charges on the individuals involved.  Although
the placement of the articles is but one factor to be considered,
because the articles cited by plaintiffs cannot be categorized as
op eds or letters to the editor, "the common expectations that
apply to those more opinionated journalistic endeavors were
inapplicable here (see, Immuno AG. v Moor-Jankowski, supra).

Thus, the circumstances under which these accusations were published 'encourag[ed] the reasonable reader to be less skeptical and more willing to conclude that [they] stat[ed] or impl[ied] facts'" (Gross, 82 NY2d at 156, quoting 600 West 115th Street 80 NY2d at 142).

IV.

At this early stage of the litigation, on this pre-answer motion to dismiss and on the record before us, we cannot state as a matter of law that the statements are pure opinion. There is a reasonable view of the claims upon which Davis and Lang would be entitled to recover for defamation, therefore the complaint must be deemed to sufficiently state a cause of action (Silsdorf, 59 NY2d at 12). Accordingly, the Appellate Division order should be reversed, with costs, and the motion to dismiss the complaint denied.

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Order reversed, with costs, and defendants' motion to dismiss the complaint denied. Opinion by Judge Rivera. Chief Judge Lippman and Judges Graffeo, Read, Smith and Abdus-Salaam concur. Judge Pigott took no part.

Decided October 21, 2014