Miserendino v Cai (2023 NY Slip Op 04031)

Miserendino v Cai

2023 NY Slip Op 04031

Decided on July 28, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 28, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, CURRAN, AND MONTOUR, JJ.

451 CA 22-00151

[*1]JOY E. MISERENDINO AND THE JOY E. MISERENDINO LAW FIRM, PC, PLAINTIFFS-APPELLANTS,
v
JOHN J. CAI AND JOHN J. CAI, MD PLLC, DEFENDANTS-RESPONDENTS. 

RUPP BAASE PFALZGRAF CUNNINGHAM LLC, SARATOGA SPRINGS (PHILLIP A. OSWALD OF COUNSEL), FOR PLAINTIFFS-APPELLANTS. 
DUKE, HOLZMAN, PHOTIADIS & GRESENS, LLP, BUFFALO (ELISE L. CASSAR OF COUNSEL), FOR DEFENDANTS-RESPONDENTS. 

 Appeal from an order of the Supreme Court, Erie County (Paul Wojtaszek, J.), entered December 27, 2021. The order, insofar as appealed from, granted the motion of defendants for summary judgment dismissing the complaint. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion of defendants is denied, and the complaint is reinstated.
Memorandum: Plaintiffs, attorney Joy E. Miserendino (Miserendino) and her law firm, commenced this action against defendants, cardiologist John J. Cai (Cai) and his medical practice, seeking damages for alleged defamatory statements that Cai—who had been romantically involved with Miserendino and had also performed work for the law firm while he and Miserendino operated their businesses out of a building owned by Cai—made about Miserendino after their relationship ended. Plaintiffs appeal from an order insofar as it granted the motion of defendants for summary judgment dismissing the complaint. We now reverse the order insofar as appealed from.
As a preliminary matter, we note our difficulty in reviewing this case inasmuch as Supreme Court did not set forth its reasoning for its determination that defendants were entitled to summary judgment (see One Flint St., LLC v Exxon Mobil Corp., 169 AD3d 1392, 1393 [4th Dept 2019]).
" 'The elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se' " (D'Amico v Correctional Med. Care, Inc., 120 AD3d 956, 962 [4th Dept 2014]). "[A] false statement 'that tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace constitutes defamation' " (Davis v Boeheim, 24 NY3d 262, 268 [2014], quoting Thomas H. v Paul B., 18 NY3d 580, 584 [2012]). "Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false, ' . . . only statements alleging facts can properly be the subject of a defamation action' " (Gross v New York Times Co., 82 NY2d 146, 152-153 [1993]; see Davis, 24 NY3d at 268). "A defamatory statement of fact is in contrast to 'pure opinion' which under our laws is not actionable because '[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation' " (Davis, 24 NY3d at 269, quoting Mann v Abel, 10 NY3d 271, 276 [2008], cert denied 555 US 1170 [2009]). "While a pure opinion cannot be the subject of a defamation claim, an opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, . . . is a mixed opinion and is actionable" (id. [internal quotation marks omitted]). "This requirement that the facts upon which the opinion [*2]is based are known 'ensure[s] that the reader has the opportunity to assess the basis upon which the opinion was reached in order to draw [the reader's] own conclusions concerning its validity' " (id.). "What differentiates an actionable mixed opinion from a privileged, pure opinion is 'the implication that the speaker knows certain facts, unknown to [the] audience, which support [the speaker's] opinion and are detrimental to the person' being discussed" (id.). "Distinguishing between fact and opinion is a question of law for the courts, to be decided based on 'what the average person hearing or reading the communication would take it to mean' " (id., quoting Steinhilber v Alphonse, 68 NY2d 283, 290 [1986]).
We agree with plaintiffs that, contrary to defendants' assertion, the court erred to the extent that it determined that Cai's alleged oral statements to Miserendino's former law partner, with whom Miserendino was in litigation concerning the distribution of fees earned by their prior, co-owned law practice, constituted pure opinion and were thus not actionable as a matter of law. Here, at a meeting he arranged during the pendency of that litigation, Cai allegedly advised the former law partner that Miserendino had dissipated the fee recovered in a case that originated with the co-owned law practice, that Miserendino was hiding money and frequently used a money transfer company to send money elsewhere, and that Miserendino was "manipulative and ethically 'sketchy.' " Shortly after the meeting, the former law partner used Cai's alleged oral statements as the basis for his request in the pending litigation against Miserendino for the appointment of a temporary receiver and for injunctive relief. We conclude on this record that, "[a]lthough [Cai's] comments were mixed statements of opinion and fact, the [former law partner] could reasonably infer, in light of [Cai's personal and] working relationship with [Miserendino], that such statements were 'based upon certain facts known to [Cai] that are undisclosed to the [former law partner] and are detrimental to [Miserendino]' " (Zulawski v Taylor [appeal No. 2], 63 AD3d 1552, 1553 [4th Dept 2009]). Defendants thus failed to meet their initial burden on the motion of establishing a privilege sufficient to warrant judgment as a matter of law with respect to Cai's alleged oral statements to the former law partner (see id.; see generally Caruso v City of Buffalo Urban Renewal Agency, 162 AD2d 974, 975 [4th Dept 1990]).
We also agree with plaintiffs that, contrary to defendants' assertion, the court erred to the extent that it determined that Cai's written statements to a federal judge, who was presiding over a bench trial in a case being litigated by plaintiffs against parties that included the federal government, did not constitute statements of fact. The record establishes that opposing counsel in the federal case had inadvertently disclosed to plaintiffs documents containing confidential information that, according to Miserendino, were returned to opposing counsel and not used by plaintiffs in litigating the federal case. A few months after the end of his relationship with Miserendino, Cai wrote a letter to the federal judge claiming that he had discovered documents in Miserendino's possession that belonged to opposing counsel and the federal government and that he "strongly believe[d] that [plaintiffs] used these documents during the trial and the submission of arguments" in the federal case. Cai further explained in the letter that he felt an "ethical obligation to give the[ ] documents to [the federal judge]" and that he was willing to discuss his claims with the federal judge in the presence of his attorney. Upon "look[ing] to the over-all context in which the assertions were made" and "consider[ing] the content of the [letter] as a whole, as well as its tone and apparent purpose," which was serious and seemingly designed to alert the federal judge to purported wrongdoing, we conclude that " 'the reasonable reader would have believed that the challenged statements were conveying facts about . . . plaintiff[s]' " (Brian v Richardson, 87 NY2d 46, 51 [1995]), namely, that plaintiffs actually retained possession of documents containing confidential information that had been inadvertently disclosed by opposing counsel in the federal case and that plaintiffs had used such documents to their advantage during the course of litigating the federal case. Additionally, in the context of Cai's submission of the letter to the federal judge, "the defamatory nature of the statement[s] cannot be immunized by [their] pairing" with the preface that Cai strongly believed that plaintiffs had retained and used the documents (Thomas H., 18 NY3d at 585; see Gross, 82 NY2d at 155).
Plaintiffs further contend that, contrary to defendants' assertion, the court erred to the extent that it determined that Cai's alleged oral and written statements did not constitute defamation per se and that plaintiffs were thus required, and failed, to plead special damages. We agree with plaintiffs. A false statement constitutes defamation per se where, as relevant here, the statement "charge[s] a person with committing a serious crime or . . . would tend to cause injury to a person's profession or business" (Geraci v Probst, 15 NY3d 336, 344 [2010]; see [*3]Liberman v Gelstein, 80 NY2d 429, 435 [1992]). "A statement imputing incompetence or dishonesty to the plaintiff is defamatory per se if there is some reference, direct or indirect, in the words or in the circumstances attending their utterance, which connects the charge of incompetence or dishonesty to the particular profession or trade engaged in by plaintiff" (Van Lengen v Parr, 136 AD2d 964, 964 [4th Dept 1988]). "Whether [a] particular statement[ is] considered defamatory per se is a question of law" (Geraci, 15 NY3d at 344). Here, we conclude that Cai's oral and written statements—which conveyed that Miserendino secreted money to avoid sharing with her former law partner fees earned by their co-owned law practice and that she acted unethically by retaining, and using to her advantage, inadvertently disclosed confidential information in the federal case—are "actionable as words that tend to injure another in his or her profession" inasmuch as the statements are "more than a general reflection upon [Miserendino's] character or qualities" and, instead, "reflect on her performance or [are] incompatible with the proper conduct of her business [and profession]" as an attorney operating law practices (Golub v Enquirer/Star Group, Inc., 89 NY2d 1074, 1076 [1997]; see generally Liberman, 80 NY2d at 436).
Next, plaintiffs contend that, contrary to defendants' assertion, the court erred to the extent that it determined that defendants are immune from defamation liability for Cai's written statements in the letter on the ground that such statements are absolutely privileged. Plaintiffs further contend that, although defendants established that Cai's written statements are subject to a qualified privilege, plaintiffs raised an issue of fact whether the statements were made with malice, which would render the statements unprotected. We again agree with plaintiffs.
"Absolute privilege, which entirely immunizes an individual from liability in a defamation action, regardless of the declarant's motives, is generally reserved for communications made by 'individuals participating in a public function, such as judicial, legislative, or executive proceedings. The absolute protection afforded such individuals is designed to ensure that their own personal interests—especially fear of a civil action, whether successful or otherwise—do not have an adverse impact upon the discharge of their public function' " (Stega v New York Downtown Hosp., 31 NY3d 661, 669 [2018]; see Rosenberg v MetLife, Inc., 8 NY3d 359, 365 [2007]; Toker v Pollak, 44 NY2d 211, 219 [1978]). "On the other hand, a statement is subject to a qualified privilege when it 'is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his [or her] interest is concerned' " (Stega, 31 NY3d at 669-670, quoting Toker, 44 NY2d at 219). "When subject to this form of conditional privilege, statements are protected if they were not made with 'spite or ill will' or 'reckless disregard of whether [they were] false or not' . . . , i.e., malice" (id. at 670, quoting Liberman, 80 NY2d at 437-438). "A qualified privilege 'places the burden of proof on this issue [of malice] upon the plaintiff' " (id., quoting Toker, 44 NY2d at 219). "Whether allegedly defamatory statements are subject to an absolute or a qualified privilege 'depend[s] on the occasion and the position or status of the speaker' . . . , a complex assessment that must take into account the specific character of the proceeding in which the communication is made" (id.). "In judicial proceedings[,] the protected participants include the Judge, the jurors, the attorneys, the parties and the witnesses," who are granted the protection of absolute privilege "for the benefit of the public, to promote the administration of justice, and only incidentally for the protection of the participants" (Park Knoll Assoc. v Schmidt, 59 NY2d 205, 209 [1983]). "The immunity does not attach solely because the speaker is a Judge, attorney, party or a witness, but because the statements are . . . 'spoken in office' " (id. at 210). Thus, for example, "statements made by counsel and parties in the course of 'judicial proceedings' are [absolutely] privileged as long as such statements 'are material and pertinent to the questions involved . . . irrespective of the motive' with which they are made" (Wiener v Weintraub, 22 NY2d 330, 331 [1968], quoting Marsh v Ellsworth, 50 NY 309, 311 [1872]; see Stega, 31 NY3d at 669). The Court of Appeals has nonetheless "reiterated that '[a]s a matter of policy, the courts confine absolute privilege to a very few situations' " (Stega, 31 NY3d at 670).
Here, we conclude that absolute privilege does not apply. Cai was not a party, a witness, or an attorney in the federal case and, although he may have performed some work on plaintiffs' behalf during the course of the federal case, his professional and personal relationship with Miserendino had ended months before his submission of the letter to the federal judge. Cai thus "had no 'office' in the [federal] judicial proceedings and therefore . . . was not entitled to the immunity received by those who did" (Park Knoll Assoc., 59 NY2d at 210; see Silverman v [*4]Clark, 35 AD3d 1, 12 [1st Dept 2006]; Garson v Hendlin, 141 AD2d 55, 59 [2d Dept 1988], lv denied 74 NY2d 603 [1989]). Moreover, viewing the evidence in the light most favorable to plaintiffs and drawing every available inference in their favor (see De Lourdes Torres v Jones, 26 NY3d 742, 763 [2016]), we conclude that plaintiffs' submissions—including Miserendino's sworn statement that she had informed Cai prior to his submission of the letter that she had returned any confidential information inadvertently disclosed by opposing counsel in the federal case and text messages in which Cai arguably threatened Miserendino's career and livelihood by alluding to his ability to jeopardize a potential verdict in the federal case if she did not agree to repay debts he believed she owed—"raised an issue of fact whether [Cai's written] statements were motivated solely by malice and thus are not protected by a qualified privilege" (Stevenson v Cramer, 151 AD3d 1932, 1934 [4th Dept 2017]; see O'Neil v Peekskill Faculty Assn., 120 AD2d 36, 43 [2d Dept 1986], appeal dismissed 69 NY2d 984 [1987]).
Based on the foregoing, we conclude that the court erred in granting defendants' motion for summary judgment dismissing the complaint.
Entered: July 28, 2023
Ann Dillon Flynn
Clerk of the Court