Stiloski v Wingate (2025 NY Slip Op 04803)

Stiloski v Wingate

2025 NY Slip Op 04803

Decided on August 27, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 27, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
PAUL WOOTEN
LOURDES M. VENTURA
DONNA-MARIE E. GOLIA, JJ.

2023-02344
 (Index No. 61905/22)

[*1]John Stiloski, et al., respondents,
v
Robert Wingate, etc., appellant.

Cornell Law School First Amendment Clinic, Ithaca, NY (Mark H. Jackson, Patrick George, and Heather E. Murray of counsel), for appellant.
Quinn Law Firm, White Plains, NY (Andrew C. Quinn, Lalit K. Loomba, and Marykate Acquisto of counsel), for respondents.

DECISION & ORDER
In an action, inter alia, to recover damages for defamation, the defendant appeals from an order of the Supreme Court, Westchester County (David F. Everett, J.), dated January 31, 2023. The order, insofar as appealed from, denied those branches of the defendant's cross-motion which were pursuant to CPLR 3211(a) to dismiss, in effect, the amended complaint and for an award of attorney's fees and costs.
ORDERED that the order is modified, on the law, by deleting the provision thereof denying those branches of the defendant's cross-motion which were pursuant to CPLR 3211(a) to dismiss so much of the causes of action alleging defamation and defamation per se as were predicated upon emails dated on or about July 26, 2020, February 28, 2021, and June 16, 2021, and a complaint filed with the New York State Department of Human Rights, and substituting therefor a provision granting those branches of the motion; as so modified, the order is affirmed insofar as appealed from, with costs to the plaintiffs.
On June 24, 2022, the plaintiffs, John Stiloski and his business, Stiloski's Automotive Corp., commenced this action, inter alia, to recover damages based upon allegedly defamatory statements made by the defendant. There are five contested communications: an email dated on or about July 26, 2020; an email dated February 28, 2021; an email dated June 16, 2021; a complaint filed with the New York State Department of Human Rights (hereinafter the DHR complaint); and a LinkedIn post. The defendant cross-moved, among other things, pursuant to CPLR 3211(a)(5) and (7) and (g) to dismiss, in effect, the amended complaint, contending that the action was a strategic lawsuit against public participation (hereinafter SLAPP suit) (see Civil Rights Law § 76-a), and for an award of attorney's fees and costs. In an order dated January 31, 2023, the Supreme Court, inter alia, denied those branches of the defendant's cross-motion. The defendant appeals.
The statute of limitations governing causes of action sounding in defamation is one year (see CPLR 215[3]; Cohen v Cohen, 210 AD3d 633, 634; Mees v Buiter, 186 AD3d 1670, 1671-1672). The plaintiffs concede that so much of the causes of action alleging defamation and defamation per se as were predicated upon the email dated on or about July 26, 2020, and the email dated June 16, 2021, are time-barred. Nonetheless, they allege that the email dated February 28, [*2]2021, was republished in the DHR complaint, which was filed less than one year prior to the commencement of this action (see Firth v State of New York, 98 NY2d 365, 371; Giuffre v DiLeo, 90 AD3d 602, 603-604). However, the republishing occurred in the context of a quasi-judicial proceeding, rendering the DHR complaint and the February 28, 2021 email republished therein absolutely privileged (see Ritzcovan v Burger, 251 AD2d 393, 394; Romeo v Village of Fishkill, 248 AD2d 700, 701; Missick v Big V Supermarkets, 115 AD2d 808, 811). While the contention that the DHR complaint is privileged was not raised in the Supreme Court, we reach the issue since it involves a question of law that appears on the face of the record and could not have been avoided if brought to the attention of the court (see Matter of Konig v WordPress.com, 112 AD3d 936, 936-937).
The only remaining contested communication is the LinkedIn post, which was posted by the defendant in March 2022. LinkedIn is a business and employment focused online social media platform with more than one billion members (see https://about.linkedin.com/?trk=homepage-basic_directory_aboutUrl [last accessed Aug. 13, 2025]). In the post, the defendant held himself out to be a "Nonprofit Leader and Consultant." As relevant to this appeal, the defendant referring to an individual, readily identifiable as Stiloski, stated that "[a] Tarrytown extremist who supports neo-Nazi causes and does a ton of business with the Village placed a massive sign on his place showing a graphic middle finger aimed at our Black community." The LinkedIn post also included the hashtag "#blacklivesmatter," as well as a photograph depicting various signs, one of which stated "ALL LIVES CAN'T MATTER UNTIL BLACK LIVES MATTER!!," and a flag outside of the Tarrytown Village Hall.
The defendant argues that so much of the causes of action alleging defamation and defamation per se as were predicated upon the LinkedIn post was subject to dismissal because this action constituted a SLAPP suit. Pursuant to Civil Rights Law § 76-a(1), an "action involving public petition and participation" is a claim based upon "any communication in a place open to the public or a public forum in connection with an issue of public interest," or "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." Civil Rights Law § 76-a(1)(d) defines "public interest" as "any subject other than a purely private matter," and shall be "construed broadly" (see VIP Pet Grooming Studio, Inc. v Sproule, 224 AD3d 78, 85). "'To make the determination of whether content is arguably within the sphere of legitimate public concern, allegedly defamatory statements can only be viewed in the context of the writing as a whole, and not as disembodied words, phrases or sentences'" (Tsamasiros v Jones, 232 AD3d 816, 819, quoting Huggins v Moore, 94 NY2d 296, 302).
On a defendant's motion pursuant to CPLR 3211(a)(7) and (g), once a defendant establishes that the action is an action involving public petition and participation, the plaintiff is "obligated to demonstrate that the causes of action alleged have a 'substantial basis in law'" (Marble Assets, LLC v Rachmanov, 192 AD3d 998, 1000, quoting CPLR 3211[g]). Further, costs and attorney's fees shall be awarded to a defendant in an action involving public petition and participation "upon a demonstration . . . that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law" (Civil Rights Law § 70-a[1][a]).
Here, the defendant established that the statements in the LinkedIn post were made on a "public forum in connection with an issue of public interest" (Civil Rights Law § 76-a[1][a][1]), as "[m]atters of public concern include matters of political, social, or other concern to the community, even those that do not affect the general population" (Aristocrat Plastic Surgery P.C. v Silva, 206 AD3d 26, 29-30). The LinkedIn post explicitly referred to the Black Lives Matter movement, a matter of public concern encompassing political and social interests, both in its text and in the attached photograph, as well as referred to Stiloski as an "extremist who supports neo-Nazi causes."
Moreover, this Court has previously found that similar social media platforms to [*3]LinkedIn, such as Facebook, constitute a public forum under New York's anti-SLAPP statute (see Nelson v Ardrey, 231 AD3d 179, 183; see also Civil Rights Law § 76-a[1][a][1]). Thus, the defendant established that this was, indeed, an action involving public petition and participation, and the burden then shifted to the plaintiffs to establish that their claims had a "substantial basis in law" (CPLR 3211[g]; see Nelson v Ardrey, 231 AD3d at 182).
"The elements of a cause of action for defamation are (a) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c) amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing special harm or constituting defamation per se" (Greenberg v Spitzer, 155 AD3d 27, 41; see Stone v Bloomberg L.P., 163 AD3d 1028, 1029). "A statement is defamatory per se if it (1) charges the plaintiff with a serious crime; (2) tends to injure the plaintiff in her or his trade, business or profession; (3) imputes to the plaintiff a loathsome disease; or (4) imputes unchastity to a woman" (Kasavana v Vela, 172 AD3d 1042, 1044; see Davidoff v Kaplan, 217 AD3d 918, 920).
"'Since falsity is a necessary element of a defamation cause of action and only facts are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action'" (VIP Pet Grooming Studio, Inc. v Sproule, 224 AD3d at 91, quoting Silverman v Daily News, L.P., 129 AD3d 1054, 1055; see Gross v New York Times Co., 82 NY2d 146, 152-153). "Thus, '[a]n expression of pure opinion is not actionable . . ., no matter how vituperative or unreasonable it may be'" (Kasavana v Vela, 172 AD3d at 1045, quoting Steinhilber v Alphonse, 68 NY2d 283, 289; see Levy v Nissani, 179 AD3d 656, 658). "'A pure opinion may take one of two forms. It may be a statement of opinion which is accompanied by a recitation of the facts upon which it is based, or it may be [a]n opinion not accompanied by such a factual recitation so long as it does not imply that it is based upon undisclosed facts'" (Kasavana v Vela, 172 AD3d at 1045, quoting Davis v Boeheim, 24 NY3d 262, 269). A mixed opinion "is actionable 'not because they convey false opinions but rather because a reasonable listener or reader would infer that the speaker [or writer] knows certain facts, unknown to [the] audience, which support [the] opinion and are detrimental to the person [toward] whom [the communication is directed]'" (id. [internal quotation marks omitted], quoting Gross v New York Times Co., 82 NY2d at 153-154; see VIP Pet Grooming Studio, Inc. v Sproule, 224 AD3d at 92). "'In distinguishing between facts and opinion, the factors the court must consider are (1) whether the specific language has a precise meaning that is readily understood, (2) whether the statements are capable of being proven true or false, and (3) whether the context in which the statement appears signals to readers that the statement is likely to be opinion, not fact'" (Crime Victims Ctr., Inc. v Logue, 181 AD3d 556, 557, quoting Silverman v Daily News, L.P., 129 AD3d at 1055; see Levy v Nissani, 179 AD3d at 658-659).
Here, the plaintiffs established that the causes of action alleging defamation and defamation per se had substantial bases in the law. The defendant's statements in the LinkedIn post, under the circumstances and in the context made, did not constitute nonactionable pure opinion (see VIP Pet Grooming Studio, Inc. v Sproule, 224 AD3d at 92; Crime Victims Ctr., Inc. v Logue, 181 AD3d at 557). The defendant did not call Stiloski a "neo-Nazi," which arguably can be pure opinion. Rather, the nuanced statements at issue in the LinkedIn post, namely that Stiloski was a "Tarrytown extremist who supports neo-Nazi causes" (emphasis added), can "readily be proven true or false" and, under these circumstances, in which the defendant held himself out to be a "Nonprofit Leader and Consultant" and the amended complaint alleged that the defendant is a well-known community activist, "signaled to the average reader or listener that the defendant was conveying facts about the plaintiff" (Kasavana v Vela, 172 AD3d at 1046). Alternatively, the statements in the LinkedIn post are those of mixed opinion and, therefore, actionable, as "a reasonable reader would have inferred that the poster had knowledge of facts, unknown to the audience, supporting the assertions made" (VIP Pet Grooming Studio, Inc. v Sproule, 224 AD3d at 92). The plaintiffs further sufficiently alleged in the amended complaint that the statements made in the LinkedIn post were detrimental to them. Specifically, the amended complaint alleged that in July 2022, a potential customer refused the plaintiffs' services and called Stiloski a "racist" and a "white supremacist." Additionally, the plaintiffs alleged that the automotive business suffered as a result of the defendant's actions, notably that a local church ceased doing business with the plaintiffs, among [*4]other things (see Kasavana v Vela, 172 AD3d at 1046). The plaintiffs further alleged that the defendant's "actions were taken with malice based on extreme animus and hatred," and that his conduct was "knowingly malicious, willful and wanton and/or showed reckless disregard" for the plaintiffs' rights (see Mable Assets, LLC v Rachmanov, 192 AD3d at 1001). Thus, the plaintiffs demonstrated that the causes of action alleging defamation and defamation per se, as well as the other causes of action that were predicated upon the alleged defamatory communication at issue, under these circumstances, had a substantial basis in law (see id.).
Since the plaintiffs sufficiently demonstrated that their claims had a substantial basis in law, the defendant was not entitled to an award of attorney's fees and costs (see Civil Rights Law § 70-a[1][a]; VIP Pet Grooming Studio, Inc. v Sproule, 224 AD3d at 93).
DILLON, J.P., WOOTEN, VENTURA and GOLIA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court