Virk v Kaleida Health (2024 NY Slip Op 02424)

Virk v Kaleida Health

2024 NY Slip Op 02424

Decided on May 3, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 3, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, OGDEN, GREENWOOD, AND KEANE, JJ.

189 CA 23-00146

[*1]AMARJIT S. VIRK, M.D., PLAINTIFF-APPELLANT,
v
KALEIDA HEALTH, DEFENDANT-RESPONDENT. 

ZDARSKY, SAWICKI & AGOSTINELLI LLP, BUFFALO (GERALD T. WALSH OF COUNSEL), FOR PLAINTIFF-APPELLANT. 
RICOTTA, MATTREY, CALLOCCHIA, MARKEL & CASSERT, BUFFALO (TOMAS J. CALLOCCHIA OF COUNSEL), FOR DEFENDANT-RESPONDENT.

 Appeal from an order of the Supreme Court, Erie County (Deborah A. Chimes, J.), entered December 22, 2022. The order granted the motion of defendant for summary judgment and dismissed the amended complaint. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiff is an anesthesiologist who, until shortly after the occurrence of an incident involving a patient in May 2013, provided services to hospitals owned and operated by defendant. During the relevant time frame, plaintiff was employed by nonparty Maple-Gate Anesthesiologists (Maple-Gate), which had been retained by defendant as its exclusive provider for anesthesiology services. During the incident in question (May 2013 incident), plaintiff allegedly provided substandard care to a patient at one of defendant's hospitals. Four days after that incident, defendant sent plaintiff a letter, signed by the president of defendant's medical and dental staff, notifying plaintiff that defendant was issuing a precautionary suspension that temporarily prohibited him from practicing in any of defendant's hospitals and facilities. A day after the letter was sent, Maple-Gate terminated plaintiff's employment. Plaintiff alleges in this action that defendant harmed his reputation by publishing the letter documenting his precautionary suspension to Maple-Gate, the National Practitioner Data Bank (NPDB), and the New York State Department of Health's Office of Professional Medical Conduct (OPMC).
According to plaintiff, his precautionary suspension had been engineered, with retaliatory and discriminatory animus, by defendant's chief of anesthesia services—someone who also worked for Maple-Gate. That doctor had been responsible for conducting an internal investigation into the May 2013 incident, and he reported his findings to defendant's chief medical officer. The chief medical officer and the president of defendant's medical and dental staff jointly made the decision to issue the precautionary suspension, relying on the findings of the internal investigation.
Plaintiff declined to request a hearing or participate in any hearing process offered by defendant to challenge his precautionary suspension, and ultimately resigned his privileges to practice at defendant's hospitals and facilities. Plaintiff nevertheless commenced a CPLR article 78 proceeding seeking, inter alia, to annul defendant's determination issuing the precautionary suspension, and he obtained a judgment annulling that determination and rescinding defendant's report of the precautionary suspension to NPDB and OPMC. Plaintiff also successfully pursued breach of contract and civil rights claims against, inter alia, Maple-Gate in an arbitration proceeding, based on findings that Maple-Gate had not followed proper procedures in terminating plaintiff and that its decision to terminate him had been motivated by non-discriminatory animus due to a bad faith investigation into the May 2013 incident.
Plaintiff commenced this action asserting in an amended complaint causes of action for, inter alia, defamation, injurious falsehood, and tortious interference with contract based on defendant's issuance of the precautionary suspension, which it related to NPDB, OPMC, and Maple-Gate. He now appeals from an order that granted defendant's motion for summary judgment dismissing the amended complaint. We affirm.
Initially, we conclude that Supreme Court properly granted the motion with respect to the defamation cause of action. "It is well established that [t]he elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se" (Conklin v Laxen, 180 AD3d 1358, 1360 [4th Dept 2020] [internal quotation marks omitted]; see D'Amico v Correctional Med. Care, Inc., 120 AD3d 956, 962 [4th Dept 2014]). This appeal involves defamation per se inasmuch as the challenged statements allegedly "tend to injure [plaintiff] in [his] trade, business or profession" (Liberman v Gelstein, 80 NY2d 429, 435 [1992]).
A statement is privileged if it "is one which, but for the occasion on which it is uttered, would be defamatory and actionable" (Park Knoll Assoc. v Schmidt, 59 NY2d 205, 208 [1983]). On a motion for summary judgment dismissing a defamation cause of action, such cause of action is properly dismissed " 'where a qualified privilege obtains and the plaintiff[ ] offer[s] an insufficient showing of actual malice' " (Shenoy v Kaleida Health, 158 AD3d 1323, 1323 [4th Dept 2018] [emphasis added], quoting Trails W. v Wolff, 32 NY2d 207, 221 [1973]). As relevant here, a "statement is subject to a qualified privilege when it is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of [their] own affairs, in a matter where [their] interest is concerned" (Stega v New York Downtown Hosp., 31 NY3d 661, 669-670 [2018] [internal quotation marks omitted]; see Toker v Pollak, 44 NY2d 211, 219 [1978]). Where a defendant establishes that a privilege applies, it has the effect of shifting the burden to the plaintiff to establish actual malice (see Stega, 31 NY3d at 670; Miserendino v Cai, 218 AD3d 1261, 1266 [4th Dept 2023]).
Here, defendant met its initial burden on the motion of establishing that the challenged statements to NPDB, OPMC, and Maple-Gate were protected by the application of a qualified privilege. With respect to the statement made to NPDB, defendant established that it reported plaintiff's precautionary suspension because it was required to do so by the Health Care Quality Improvement Act of 1986 (HCQIA) (see 42 USC § 11101 et seq.). The HCQIA "creates a qualified privilege for information provided in medical peer review proceedings concerning the competence or professional conduct of a physician, unless such information is false and the person providing it knew that such information was false" (Colantonio v Mercy Med. Ctr., 135 AD3d 686, 690 [2d Dept 2016], lv denied 28 NY3d 903 [2016] [internal quotation marks omitted]; see 42 USC §§ 11111 [a] [2]; 11112 [a]). Defendant established that the decision to report the precautionary suspension to NPDB was made "in the reasonable belief that the action was in the furtherance of quality health care" based on its concerns over plaintiff's conduct during the May 2013 incident (§ 11112 [a] [1]). Defendant also established that it engaged in reasonable efforts to obtain the facts surrounding the incident (see § 11112 [a] [2]) and that it had made the decision to report the precautionary suspension to NPDB after plaintiff had the opportunity to avail himself of "adequate notice and hearing procedures" (§ 11112 [a] [3]). There is no dispute that plaintiff declined to participate in the available hearing procedures, in favor of resigning his privileges with defendant, and that defendant made its report to NPDB months after that occurred, as it was required to do (see § 11133 [a] [1]).
With respect to the statement made to OPMC, we conclude that defendant established that the statement was privileged under the Public Health Law. Public Health Law § 230 requires entities such as defendant to report professional misconduct to OPMC and provides, as relevant here, that "[s]uch reports shall remain confidential and shall not be admitted into evidence in any administrative or judicial proceeding" (§ 230 [11] [a]). Public Health Law § 2805-j requires hospitals to maintain a program to identify and prevent, inter alia, medical malpractice. As relevant here, hospitals are required to enact "[p]olicies to ensure compliance with the reporting requirements of . . . [Public Health Law § 230 (11)]" (§ 2805-j [1] [i]). In connection with those requirements, Public Health Law § 2805-m (3) creates a privilege, stating in pertinent part: "There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any . . . entity on account of the communication of information in the [*2]possession of such . . . entity, or on account of any recommendation or evaluation, regarding the qualifications, fitness, or professional conduct or practices of a physician, to any governmental agency . . . as required by[, inter alia, Public Health Law § 2805-j]. The foregoing shall not apply to information which is untrue and communicated with malicious intent." Here, defendant established that its statement to OPMC was protected by the privilege contained in Public Health Law § 2805-m (3) inasmuch as its decision to notify OPMC about plaintiff's precautionary suspension was done in furtherance of its medical malpractice prevention program, as required by law (see Colantonio v Mercy Med. Ctr., 73 AD3d 966, 968-969 [2d Dept 2010]; Cooper v Hodge, 28 AD3d 1149, 1150 [4th Dept 2006]; see generally Kirell v Vytra Health Plans Long Is., Inc., 29 AD3d 638, 639 [2d Dept 2006]).
With respect to Maple-Gate, we conclude that defendant established that its statement about the precautionary suspension was protected by the common interest privilege, which applies "when a person [or entity] makes a good[-]faith, bona fide communication upon a subject in which [the person or entity] has an interest, or a legal, moral or societal interest to speak, and the communication is made to a person [or entity] with a corresponding interest" (Stevenson v Cramer, 151 AD3d 1932, 1933 [4th Dept 2017] [internal quotation marks omitted]). Defendant notified Maple-Gate about the precautionary suspension based on its reasonable belief that plaintiff's actions appeared to jeopardize the life and well-being of patients, and required immediate action to reduce such risk. Inasmuch as both entities were health care providers, and given that Maple-Gate was defendant's exclusive provider of anesthesiology services, they shared a "legal, moral or societal interest" in protecting the well-being of patients and preventing medical malpractice (id. [internal quotation marks omitted]; see also Privolos v St. Barnabas Hosp., 1 AD3d 126, 127 [1st Dept 2003]; see generally Liberman, 80 NY2d at 437).
We further conclude that, in opposition to the motion, plaintiff failed to raise a triable issue of material fact with respect to whether the challenged statements were made by defendant with actual malice sufficient to defeat the application of any of the privileges discussed above. Simply put, the "defense of qualified privilege is defeated by a showing that the defendant spoke with malice, i.e., where it is shown that 'the motivation for making such statements was spite or ill will (common-law malice) or [that] the statements [were] made with [a] high degree of awareness of their probable falsity (constitutional malice)' " (Kondo-Dresser v Buffalo Pub. Schools, 17 AD3d 1114, 1115 [4th Dept 2005], quoting Foster v Churchill, 87 NY2d 744, 752 [1996]). Even assuming, arguendo, that defendant's chief of anesthesia services acted with malice in conducting a bad faith investigation into the May 2013 incident, we conclude that any malice on his part is irrelevant inasmuch as he was not the official who acted on defendant's behalf in issuing the precautionary suspension letter. Rather, the operative decision-makers—i.e., the speakers—for purposes of this case were defendant's chief medical officer and its president of the medical and dental staff, who made their decision based on their reasonable reliance on the report provided by the chief of anesthesia services.
Notably, "[a] qualified privilege may be sustained if the speaker is genuinely unaware that a statement is false because the failure to investigate its truth, standing alone, is not enough to prove actual malice even if a prudent person would have investigated before publishing the statement" (Sweeney v Prisoners' Legal Servs. of N.Y., 84 NY2d 786, 793 [1995]). Here, plaintiff submitted no evidence that defendant's chief medical officer or its president of the medical and dental staff knew that the report of the chief of anesthesia services was false or made in bad faith. There is also no evidence supplied by plaintiff that the relevant decision-makers intentionally avoided learning the truth about the accusations against plaintiff. To the extent that those decision-makers were aware of any past strife between plaintiff and the chief of anesthesia services, it is well settled that "[e]arlier disputes are not evidence of malice" (Matter of Williams v County of Genesee, 306 AD2d 865, 868 [4th Dept 2003] [internal quotation marks omitted]; see Shapiro v Health Ins. Plan of Greater N.Y., 7 NY2d 56, 64 [1959]).
For the same reasons detailed above, we further conclude that the court properly granted the motion with respect to the injurious falsehood cause of action inasmuch as defendant established that the challenged statements were privileged (see American Petroleum Inst. v TechnoMedia Intl., Inc., 699 F Supp 2d 258, 267 n 7 [D DC 2010]; see generally Chernick v Rothstein, 204 AD2d 508, 509 [2d Dept 1994]; 2A NY PJI 3:55 at 615-616 [2024]), and plaintiff failed to raise a triable issue of material fact in opposition on the issue of actual malice (see Franco Belli Plumbing & Heating & Sons, Inc. v Dimino, 164 AD3d 1309, 1312 [2d Dept [*3]2018]).
Finally, we reject plaintiff's contention that the court erred in granting the motion with respect to the cause of action for tortious interference with contract. "Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom" (Lama Holding Co. v Smith Barney, 88 NY2d 413, 424 [1996]; see Canandaigua Natl. Bank & Trust Co. v Acquest S. Park, LLC, 170 AD3d 1663, 1664-1665 [4th Dept 2019]). Here, defendant met its initial burden on the motion with respect to that cause of action by submitting evidence establishing that it did not intentionally induce Maple-Gate to breach its employment contract with plaintiff by issuing the precautionary suspension. Rather, defendant established that it informed Maple-Gate, its exclusive provider at the time for anesthesiology services, about the suspension based exclusively on its concerns about patient safety (see Amalfi, Inc. v 428 Co., Inc., 185 AD3d 1553, 1556 [4th Dept 2020]). We further conclude that, in opposition, plaintiff did not raise an issue of fact in that respect (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Entered: May 3, 2024
Ann Dillon Flynn
Clerk of the Court