■ JUNGSIL CUSIMANO, Appellant, v UNITED HEALTH SERVICES HOSPITALS, INC., et al., Respondents, et al., Respondents. [937 NYS2d 413]—

Peters, J.P.

When the search was completed, Hayford, Sebesta and Marshall confiscated the Provigil and allegedly reported to April Fredenburg and Shari Paulhamus, two other medical office assistants working at CSFCC, that they had found narcotics in plaintiff's office, that plaintiff would likely be arrested and dismissed from her position and that the locks to CSFCC would be changed. Plaintiff commenced this action in June 2007 against, among others,[1] Sebesta, Hayford, Marshall and UHSH, alleging causes of action for slander per se, intentional infliction of emotional distress, prima facie tort and trespass. Following the completion of discovery, Supreme Court granted motions by

1. Plaintiff's complaint also includes defendants John Doe and Jane Doe, who plaintiff describes as employees of UHSH with supervisory authority over Sebesta, Hayford and Marshall.

Sebesta and UHSH and Hayford and Marshall for summary judgment and dismissed the complaint, prompting this appeal.

Supreme Court properly determined that the statements made to Fredenburg and Paulhamus are protected by a qualified privilege.[2] " 'A qualified privilege arises when a person makes a good-faith, bona fide communication upon a subject in which he or she has an interest, or a legal, moral or societal interest to speak, and the communication is made to a person with a corresponding interest' " (*Lerwick v Krna*, 29 AD3d 1206, 1208 [2006], *lv denied* 7 NY3d 712 [2006], quoting *Grier v Johnson*, 232 AD2d 846, 847 [1996]; *see Liberman v Gelstein*, 80 NY2d 429, 437 [1992]). Such common interest may include statements to fellow employees on a subject concerning the employer (*see Liberman v Gelstein*, 80 NY2d at 437; *Curren v Carbonic Sys., Inc.*, 58 AD3d 1104, 1106 [2009]; *Sanderson v Bellevue Maternity Hosp.*, 259 AD2d 888, 889-890 [1999]; *Roberts v Oellrich & Behling*, 223 AD2d 860, 860 [1996]). Here, the statements by Hayford, Sebesta and Marshall—employees of UHSH—were made solely to their coemployees, all of whom were collectively responsible for the functioning and proper operation of CSFCC. Inasmuch as all had a common interest in knowing whether pharmaceuticals were stored in violation of UHSH policy and the implications to plaintiff—the only physician on staff at CSFCC—defendants demonstrated that the statements were protected by a qualified privilege (*see Curren v Carbonic Sys., Inc.*, 58 AD3d at 1106; *Sanderson v Bellevue Maternity Hosp.*, 259 AD2d at 889-890; *Roberts v Oellrich & Behling*, 223 AD2d at 860), thereby shifting the burden to plaintiff to prove that they "acted out of personal spite or ill will, with reckless disregard for the statements' truth or falsity, or with a high degree of belief that their statements were probably false" (*Foster v Churchill*, 87 NY2d 744, 752 [1996]; *see Liberman v Gelstein*, 80 NY2d at 438-439).

While plaintiff asserts that Hayford, Sebesta and Marshall harbored ill will towards her as a result of certain events that transpired in the days prior to the search, "spite or ill will refers not to [a] defendant's general feelings about [a] plaintiff, but to the speaker's motivation for making the defamatory statements[,] . . . [and] a triable issue is raised only if a jury could reasonably conclude that malice was the one and only cause for the publication" (*Liberman v Gelstein*, 80 NY2d at 439

---

2. To the extent that any statements were made to the medical community or the general public, plaintiff has offered no proof as to who made these statements. As such, our analysis is limited to the alleged defamatory statements made to Fredenburg and Paulhamus in November 2006.

[internal quotation marks and citations omitted]; *see Clark v Schuylerville Cent. School Dist.*, 74 AD3d 1528, 1529 [2010]; *Curren v Carbonic Sys., Inc.*, 58 AD3d at 1106). Here, Hayford, Sebesta and Marshall conducted the search based upon first-hand information from Marshall that she observed pharmaceutical samples being delivered to plaintiff's office, and their statements to Fredenburg and Paulhamus following the discovery of the samples were made in furtherance of the common interest protected by the privilege. Thus, even if they disliked plaintiff or possessed some ill will towards her, plaintiff has failed to make an evidentiary showing that they were motivated by malice *alone* in making the statements (*see Foster v Churchill*, 87 NY2d at 752; *Liberman v Gelstein*, 80 NY2d at 439; *Grier v Johnson*, 232 AD2d at 848-849). Nor has plaintiff proffered competent evidence demonstrating that either Hayford, Sebesta or Marshall knew that their statements describing Provigil as a narcotic were false or that they acted with reckless disregard as to whether they were false (*see Foster v Churchill*, 87 NY2d at 752; *Liberman v Gelstein*, 80 NY2d at 438-439). Rather, the proof established that the terms "narcotic" and "controlled substance" are often used interchangeably throughout the medical community, and that Hayford, Sebesta and Marshall neither knew nor understood the difference. As such, plaintiff failed to demonstrate a triable issue regarding the existence of constitutional or common-law malice sufficient to defeat the qualified privilege. The privileged nature of these statements likewise precludes liability against UHSH under the theory of respondeat superior (*see Curren v Carbonic Sys., Inc.*, 58 AD3d at 1107; *Sanderson v Bellevue Maternity Hosp.*, 259 AD2d at 892).

Moreover, we agree with Supreme Court's additional finding that the statements at issue, with the exception of the statement that narcotics were found in plaintiff's office, constituted nonactional opinion (*see Mann v Abel*, 10 NY3d 271, 276 [2008], *cert denied* 555 US 1170 [2009]; *Weiner v Doubleday & Co.*, 74 NY2d 586, 593 [1989], *cert denied* 495 US 930 [1990]). As for the statement regarding the discovery of "narcotics," it is well settled that truth is an absolute defense to a claim of defamation and substantial truth is all that is required (*see Proskin v Hearst Corp.*, 14 AD3d 782, 783 [2005]; *Ingber v Lagarenne*, 299 AD2d 608, 609 [2002], *lv denied* 99 NY2d 507 [2003]; *Love v Morrow & Co.*, 193 AD2d 586, 587 [1993]). Although Provigil is technically not a narcotic but, instead, a controlled substance,[3] as previously noted, the terms are used interchangeably and

---

**3.** The parties do not dispute that, while all narcotics are controlled substances, not all controlled substances are narcotics.

often confused even within the medical community. More importantly, the deposition testimony and affidavits of Fredenburg and Paulhamus, as well their handwritten notes made contemporaneous with the incident, reveal that at the time this statement was made, they were also specifically informed that what was found in plaintiff's office was Provigil. Thus, while use of the term "narcotic" may have been technically incorrect, the essence of the statement was that unsecured medications were found in plaintiff's office. Under these circumstances, we find that the statement constituted a "basically accurate account" and, therefore, is not actionable (*Nekos v Kraus*, 62 AD3d 1144, 1145 [2009] [internal quotation marks and citation omitted]; *see Miller v Journal-News*, 211 AD2d 626, 627 [1995]; *see also Rosen v Capital City Press*, 314 So 2d 511 [La 1975] [newspaper article that reported that doctor was indicted for crimes involving distribution of "narcotics," and which listed the specific drugs he was charged with illegally distributing, was substantially true notwithstanding a technical difference between "narcotics" and the nerve stimulant drugs that the doctor illegally distributed]).

We are similarly unpersuaded that Supreme Court erred in dismissing plaintiff's claim for intentional infliction of emotional distress. Such a cause of action required plaintiff to plead and prove extreme and outrageous conduct, the intentional or reckless nature of such conduct, a causal relationship between the conduct and the resulting injury, and severe emotional distress (*see Howell v New York Post Co.*, 81 NY2d 115, 121 [1993]; *Christenson v Gutman*, 249 AD2d 805, 808 [1998]). Here, the complained of conduct—i.e., the actions of Hayford, Sebesta and Marshall in performing a search of plaintiff's office based on Marshall's assertion that she observed pharmaceutical samples being delivered there in violation of UHSH policy, their confiscation of the controlled substance samples found and subsequent statements to CSFCC personnel relating their concerns—was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303 [1983] [internal quotation marks omitted]; *accord Howell v New York Post Co.*, 81 NY2d at 122). Furthermore, plaintiff presented no medical evidence to substantiate her general claims that she suffered severe emotional distress (*see Roche v Claverack Coop. Ins. Co.*, 59 AD3d 914, 918 [2009]; *Walentas v Johnes*, 257 AD2d 352, 353 [1999], *lv dismissed* 93 NY2d 958 [1999]). As such, summary dismissal of this claim was warranted.

We reach a similar conclusion with respect to plaintiff's claim

for prima facie tort. To prevail on such a claim, plaintiff must demonstrate "(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful" (*Freihofer v Hearst Corp.*, 65 NY2d 135, 142-143 [1985]; *see Roche v Claverack Coop. Ins. Co.*, 59 AD3d at 917). Furthermore, "there is no recovery in prima facie tort unless malevolence is the sole motive for [the] defendant's otherwise lawful act or, in [other words], unless [the] defendant acts from 'disinterested malevolence' " (*Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314, 333 [1983], quoting *American Bank & Trust Co. v Federal Reserve Bank of Atlanta*, 256 US 350, 358 [1921]; *accord Morrison v Woolley*, 45 AD3d 953, 954 [2007]; *see Lerwick v Kelsey*, 24 AD3d 931, 931-932 [2005], *lv denied* 6 NY3d 711 [2006]). While conceding that Hayford, Sebesta and Marshall had a right to investigate a report that plaintiff was improperly storing pharmaceutical drugs, plaintiff nevertheless claims that their search of her office was without justification. The evidence, however, establishes that Hayford's job responsibilities included ensuring that CSFCC was in compliance with UHSH policy, and he had the authority to enter all parts of the facility to ensure compliance. And, as previously noted, Hayford, Sebesta and Marshall conducted the search of plaintiff's office based upon firsthand information that pharmaceutical samples were stored in plaintiff's office in violation of UHSH policy. As malevolence was not the sole motive, plaintiff's prima facie tort claim was properly dismissed (*see White v Ivy*, 63 AD3d 1236, 1239 [2009]).

Finally, dismissal of plaintiff's claim for trespass was also warranted inasmuch as plaintiff did not own, or have exclusive possessory rights to, her office space (*see Wild v Hayes*, 68 AD3d 1412, 1414 [2009]; *Cornick v Forever Wild Dev. Corp.*, 240 AD2d 980, 981 [1997]).

Rose, McCarthy, Garry and Egan Jr., JJ., concur. Ordered that the order is affirmed, with one bill of costs. **[Prior Case History: 30 Misc 3d 1229(A), 2011 NY Slip Op 50268(U).]**