## Maines Food & Party Warehouse, Inc. v Hurlburt

2025 NY Slip Op 30781(U)

March 10, 2025

Supreme Court, Broome County

Docket Number: Index No. EFCA2024001326

Judge: Eugene D. Faughnan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At a Motion Term of the Supreme Court of the State of New York held in and for the Sixth Judicial District at the Broome County Courthouse, Binghamton, New York, on the 15th day of November 2024.

PRESENT:    HON. EUGENE D. FAUGHNAN
            Justice Presiding

STATE OF NEW YORK
SUPREME COURT: COUNTY OF BROOME
_____

MAINES FOOD & PARTY WAREHOUSE, INC.,

                        Plaintiff,                              DECISION AND ORDER

            vs.

                                                               Index No. EFCA2024001326

BRADLEY HURLBURT,

                        Defendant.
_____

APPEARANCES:

Counsel for Plaintiff:                  Hinman Howard & Kattell, LLP
                                        BY: PAUL T. SHEPPARD, ESQ.
                                        80 Exchange Street
                                        PO Box 5250
                                        Binghamton, NY 13902-5250

Counsel for Defendant:                  Pheterson Spatorico LLP
                                        BY: STEVEN A. LUCIA, ESQ.
                                        45 Exchange Blvd., 3rd Floor
                                        Rochester, NY 14614

**EUGENE D. FAUGHNAN, J.S.C.**

This matter is before the Court to consider the motion filed by Plaintiff Maines Food and Party Warehouse (hereinafter "Maines") to dismiss the first, second and third Counterclaims of Defendant Bradley Hurlburt (hereinafter "Hurlburt"). Oral argument was conducted and attorneys for both parties were present. After due deliberation, this Decision and Order constitutes the determination of this Court.

## BACKGROUND FACTS

Plaintiff Maines is involved in the sale of food, supplies and kitchen equipment. It operates a retail store in Binghamton. Hurlburt was employed by Maines Paper and Food Service, Inc. (the former parent corporation of Plaintiff company) from March 2009 to March 2020 and then employed as a Director of Plaintiff from May 2020 through March 2024. In the summer of 2023, the Plaintiff retail store began exploring the possibility of expanding its business to include a local distribution network to supply food and other supplies to restaurants and retail outlets. That led Plaintiff to consider the possibility of acquiring Behlog & Son Produce, Inc. ("Behlog"), a local business engaged in the distribution of meat and produce. William Maines, Plaintiff's president, tasked Hurlburt with obtaining Behlog's financial information to aid in determining the feasibility of a purchase. Plaintiff contends that Hurlburt gathered the information, but then failed to disclose it to Plaintiff and instead, kept the information for himself so that he could purchase Behlog. Hurlburt formed an entity named BLJR Distribution, LLC ("BLJR") in January 2024, resigned from Maines in March 2024, and then BLJR purchased Behlog in April 2024.

Maines commenced this action on May 17, 2024 by the filing of a Summons and Verified Complaint raising causes of action related to interference with a business opportunity. On June 28, 2024, Defendant filed an Answer with Counterclaims for defamation, prima facie tort/corporate espionage and hostile workplace.

Plaintiff's current motion seeks dismissal of Defendant's Counterclaims. In support of the motion, Plaintiff submitted an affidavit of Paul T. Sheppard, Esq., sworn to on August 7, 2024 and a Memorandum of Law. Defendant filed opposition papers on November 1, 2024,

2

consisting of affidavits of Steven A. Lucia, Esq., Bradley Hurlburt, and George Bickham (an employee of BLJR) as well as a Memorandum of Law. In his opposition papers, Defendant withdrew the third Counterclaim, leaving just the Counterclaims of defamation and prima facie tort/corporate espionage. In reply, Plaintiff submitted affirmations of Paul T. Sheppard, Esq., William Maines and Karen Chier (Administrative Assistant at Maines), as well as Exhibits "A" through "C" and a Reply Memorandum of Law.

Plaintiff argues that the alleged defamatory statements are not sufficiently specific, are non-actionable opinions and/or are protected by a common interest privilege. Plaintiff further argues that any Counterclaim for prima facie tort must be dismissed for failure to allege special damages, and that a corporate espionage claim would belong to BLJR, and not to Defendant individually.

## LEGAL DISCUSSION AND ANALYSIS

It is well established that "[o]n a motion to dismiss made pursuant to CPLR 3211, a court should construe the pleadings liberally, accept the allegations as true and afford the party opposing the motion the benefit of every possible inference to determine whether the facts alleged fit within a cognizable legal theory." *T. Lemme Mech., Inc. v. Schalmont Cent. School Dist.*, 52 AD3d 1006, 1008 (3rd Dept. 2008) (citations omitted); *see, EBC I, Inc. v. Goldman Sachs & Co.*, 5 NY3d 11, 19 (2005); *Leon v. Martinez*, 84 NY2d 83, 87 (1994); *NYAHSA Servs., Inc., Self-Ins. Trust v. People Care Inc.*, 141 AD3d 785 (3rd Dept. 2016); *Kreamer v. Town of Oxford*, 91 AD3d 1157 (3rd Dept. 2012); *Stainless Broad. Co. v. Clear Channel Broad. Licenses, L.P.*, 58 AD3d 1010 (3rd Dept. 2009). The standard to dismiss a Counterclaim is the same as dismissal of a cause of action in a Complaint. *See, Twitchell Tech. Prods., LLC v. Mechoshade Sys., LLC,* 227 AD3d 45 (2nd Dept. 2024); *Shah v. Mitra*, 171 AD3d 971 (2nd Dept. 2019). The liberal interpretation of the pleading is not without limits and "[n]otwithstanding the broad pleading standard, bare legal conclusions with no factual specificity do not suffice to withstand a motion to dismiss... [and] '[d]ismissal ... is warranted if the [pleading] fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery.'" *Mid-Hudson Val. Fed. Credit Union v.*

3

*Quartararo & Lois, PLLC*, 155 AD3d 1218, 1219 (3rd Dept. 2017) [internal citations omitted] *quoting Connaughton v. Chipotle Mexican Grill, Inc.*, 29 NY3d 137, 142 (2017).

"[T]he ultimate criterion is whether the proponent of the pleading has a cause of action, not whether he or she has stated one." *Schmidt & Schmidt, Inc. v. Town of Charlton*, 68 AD3d 1314, 1315 (3rd Dept. 2009), *quoting Leon v. Martinez*, 84 NY2d at 88. The court should not make factual determinations on a motion to dismiss. *See, Niagara Mohawk Power Corp. v. State*, 300 AD2d 949 (3rd Dept. 2002). Whether the complaint [or Counterclaim] will withstand a later motion for summary judgment, or whether Plaintiff [or Defendant] will ultimately be able to prove the claims at trial, does not play any part in the determination. *See, EBC I, Inc. v. Goldman Sachs & Co.*, 5 NY3d 11; *Brown v. University of Rochester*, 224 AD3d 1180 (3rd Dept. 2024); *Duffy v. Baldwin*, 183 AD3d 1053 (3rd Dept. 2020).

1.    <u>Counterclaim for defamation</u>

Defendant's first Counterclaim is based on defamation and concerns three statements allegedly made by William Maines shortly after Defendant's separation from employment. Defendant claims that Mr. Maines called a meeting of all employees to address Mr. Hurlburt's departure, and that Mr. Maines made several defamatory statements during the course of the meeting. The alleged statements were that that Defendant was terminated because he "stole $250,000 from Plaintiff" and that "Brad [Hurlburt] is so f***ed up he has problems" (bracket in original) and that Mr. Maines referred to Defendant as a "n***er". Although Plaintiff disputes that the statements were ever made, it acknowledges that the allegations are deemed true for purposes of this motion. *See e.g. Twitchell Tech. Prods., LLC v. Mechoshade Sys., LLC*, 227 AD3d 45; *Reszka v. Collins*, 136 AD3d 1299 (4th Dept. 2016); *see also, Davis v. Boeheim*, 24 NY3d 262 (2014). Even with that concession, Plaintiff argues that the defamation claims cannot stand.

Defamation involves "'a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se.'" *Jackie's Enters., Inc. v. Belleville*, 165 AD3d 1567, 1569-1570 (3rd Dept. 2018), *quoting Loch Sheldrake Beach & Tennis Inc. v. Akulich*, 141 AD3d 809, 815 (3rd Dept. 2016); *accord Conklin v. Laxen*, 180 AD3d 1358 (4th

4

Dept. 2020); *see, Sibley v. Meridian Wildlife Servs., LLC*, 2025 NY App. Div. LEXIS 6, 222 NYS3d 826 (3rd Dept. 2025). Defamation has also been described as a false statement that "'expose[s] the plaintiff to public contempt, ridicule, aversion or disgrace, or induce[s] an evil opinion of him in the minds of right-thinking persons, and … deprive[s] him of their friendly intercourse in society'". *Foster v. Churchill*, 87 NY2d 744, 751 (1996), *quoting Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 NY2d 369, 379 (1977). A defamation claim "is subject to dismissal if the statements are insufficiently pleaded, constitute nonactionable opinion, or are subject to a qualified privilege defense." *Landa v. Capital One Bank (USA), N.A.*, 172 AD3d 1052, 1053 (2nd Dept. 2019) (citations omitted). Plaintiff raises all of those arguments on this motion.

## A. Required specificity

Plaintiff argues that Defendant's defamation Counterclaim is not adequately specific, with regard to the exact <u>words</u> that were used, or the <u>time</u> that the statements were made. Defamation claims have a heightened pleading standard in that they must "set forth the particular words allegedly constituting defamation" (CPLR 3016[a]) and "must also allege the time when, place where, and manner in which the false statement was made, and specify to whom it was made." *Nofal v. Yousef*, 228 AD3d 772, 774 (2nd Dept. 2024) (quotation marks and citation omitted); *see, Dillon v. City of New York*, 261 AD2d 34 (1st Dept. 1999). The particularity requirement for defamation encompasses the statutory component to state the particular words (CPLR 3016[a]) and the general defamation rule to set forth the time, place and manner of the statements [*see, Sibley v. Meridian Wildlife Servs., LLC*, 2025 NY App. Div. LEXIS 6], which provides the court and parties notice of the occurrences relied upon.

### 1. <u>Requirement to set forth the words complained of</u>

CPLR 3016(a) requires the aggrieved party to set forth the specific objectionable words. *See, e.g. Matter of La Barbera v. Town of Woodstock*, 29 AD3d 1054 (3rd Dept. 2006). In Defendant's Counterclaim, he alleged that Mr. Maines said that Defendant was fired because he "stole $250,000 from Plaintiff." The allegation is clear and concise as to exactly what Mr.

5

[* 5]

Maines said. Plaintiff did not initially challenge the adequacy of that language. However, in Defendant's opposition to the motion to dismiss, he submitted his own affidavit wherein he alleged that Mr. Maines said that Defendant "embezzled $250,000 from [Plaintiff]." There is a difference in the wording: "stole" versus "embezzled". Had Defendant not filed his own affidavit setting forth different verbiage, there probably would have been no issue. But having filed an affidavit that varied from the Counterclaim, Plaintiff believes that there is now an ambiguity as to what was actually said, justifying dismissal.[1]

Although Defendant's affidavit does create confusion, it does not completely *negate* the allegation in the Counterclaim. The allegation in the Counterclaim is sufficient and specific, even if the affidavit does not exactly correspond, or support, the initial account of the specific words. It is possible that both phrases were used, in which case the Counterclaim and the affidavit could both be true. A slightly different recitation of words in Defendant's affidavit does not eviscerate the allegations of the Counterclaim itself- that Defendant stole from the company. Although the affidavit does not provide direct support for the Counterclaim, it does not preclude it either. Accordingly, the Counterclaim is not subject to dismissal due to the lack of specific wording as to the allegation of stealing.

### 2. Time of the alleged statements

Plaintiff also challenges the defamation claim as not stating when the alleged statements were made. The Counterclaim alleges that the all three statements were spoken "shortly after Hurlburt's separation from employment" and during a "meeting of all of Plaintiff's employees to discuss Hurlburt's separation". There is no specific date or time provided as to when that event occurred. Plaintiff believes that is a defect justifying dismissal of the defamation claim.

Here, although the precise date and time is not identified in the Counterclaim, the Court finds that the allegations are adequate to provide the requisite detail as to <u>when</u> the statements were made. The Counterclaim describes the statements as having been made shortly after Defendant left Plaintiff's employment, and during a company meeting called by Mr. Maines to discuss Defendant's departure. The allegations fairly apprise Plaintiff of the time of the publication, which is adequate to enable Plaintiff to conduct any necessary investigation. In fact,

---

[1] Plaintiff does not raise an issue as to the specific words of the second and third statements.

Plaintiff submitted reply papers which included an affidavit of William Maines in which he stated that "[s]everal weeks after [Defendant] resigned, I scheduled a Zoom meeting of Maines managers... The purpose of the meeting was to assure everyone that we were committed to the business, were hiring a new general manager, and had no intentions of closing." Plaintiff also submitted an affidavit of Karen Chier, an Administrative Assistant for Plaintiff who stated that she "was responsible for scheduling and participated in the Zoom meeting of Maines managers that took place shortly after [Defendant] resigned."

Although there is a discrepancy as to whether the meeting was with "all employees" (as alleged by Defendant) or "all managers" (as claimed by Plaintiff), it is apparent that the allegations in the Counterclaim were adequate for Plaintiff to investigate, review its own materials, ascertain the date of the meeting, and formulate a response. That supports the conclusion that the allegations were sufficiently specific, as to the time. While there are cases finding that phrases such as "from June, July, August and September 2012 through the present [September 2103]" (*Arvanitakis v. Lester*, 145 AD3d 650 [2nd Dept. 2016]) or that the offending statements were made "in or about Spring 2016 or in April or May 2016" (*Wolberg v. IAI N. Am., Inc.*, 161 AD3d 468 [1st Dept. 2018]) were not sufficiently specific, the Court considers the information in this case adequate to meet the purpose behind the specificity requirement, i.e. to fairly inform the parties and the Court as to the timing underlying the claim.[2]

## B. Were the statements "defamatory"? (Fact, Opinion or Mixed Opinion)

Having concluded that the first Counterclaim meets the minimum specificity, the Court must next determine if the statements can be characterized as defamatory. Of course, not every statement that a person does not like is defamatory.

The question of whether the "words are defamatory presents a legal question to be resolved by the court in the first instance." *Aronson v. Wiersma*, 65 NY2d 592, 593 (1985) (citations omitted); *Weiner v. Doubleday & Co.*, 142 AD2d 100, 104 (1st Dept. 1988). The

---

[2] Identifying the specific date could also be an important consideration in calculating the Statute of Limitations, which begins to run when the statements were originally made. *See*, CPLR 215 (3); *Melious v. Besignano*, 125 AD3d 727 (2nd Dept. 2015). There is no issue as to Statute of Limitations in this case as Defendant did not leave employment until March 2024, so the statements were made subsequent to that date, and this action was commenced on May 17, 2024 with the Counterclaim being filed on June 28, 2024, well within the one year Statute of Limitations.

statement must also be false, and the truth of a statement is an absolute defense. *See, Proskin v. Hearst Corp.*, 14 AD3d 782, 783 (3rd Dept. 2005). Statements of pure opinion are not actionable as defamation. *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 NY2d 369; *see, Davis v. Boeheim*, 24 NY3d 262; *Steinhilber v. Alphonse*, 68 NY2d 283 (1986); *Hull v. Town of Prattsville*, 145 AD3d 1385 (3rd Dept. 2016). A statement must be false to be defamatory, and only facts, as opposed to opinions, can be established as false. Accordingly, "'only statements alleging facts can properly be the subject of a defamation action.'" *Gross v. New York Times Co.*, 82 NY2d 146, 152-153 (1993), *quoting 600 W. 115th St. Corp. v. Von Gutfeld*, 80 NY2d 130, 139 (1992); *Thomas H. v. Paul B.*, 18 NY3d 580, 584 (2012).

Oftentimes, there is not a bright line distinction between opinion and facts. The analysis "depends on 'whether a reasonable reader or listener would understand the complained-of assertions as opinion or statements of facts.'" *Millus v. Newsday, Inc.*, 89 NY2d 840, 842 (1996), *quoting Brian v. Richardson*, 87 NY2d 46, 52 (1995). Statements of pure opinion can fall into two categories: a statement of opinion that includes the facts upon supporting it; or, a statement of opinion that does not include the facts upon which it is based, as long as "it does not imply that it is based on undisclosed facts." *Steinhilber v. Alphonse*, 68 NY2d 283, 289; *Davis v. Boeheim*, 24 NY3d 262. Stated differently, if the statement "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, ... it is a 'mixed opinion' and is actionable." *Steinhilber v. Alphonse*, 68 NY2d at 289 (citation omitted). "What differentiates an actionable mixed opinion from a privileged, pure opinion is the implication that the speaker knows certain facts, unknown to the audience, which support the speaker's opinion and are detrimental to the person being discussed." *Davis v. Boeheim*, 24 NY3d at 269 (internal brackets, quotation marks and end citation omitted). It is the superior knowledge that imbues the statement with an air of factuality.

The first statement discussed in Hurlburt's defamation Counterclaim accused Defendant of stealing (or embezzling) $250,000 from the Plaintiff company. Statements of the commission of a serious crime can certainly qualify as defamation/slander. *Schenkman v. New York Coll. of Health Professionals*, 29 AD3d 671 (2nd Dept. 2006) (allegations that defendant falsely stated that plaintiff was fired for stealing or embezzling from the defendant state a cause of action for defamation); *see, Liberman v. Gelstein*, 80 NY2d 429 (1992); *Thomas H. v. Paul B.*, 18 NY3d 580; *see also, Jesberger v. CVS Health Solutions, LLC*, 222 AD3d 849 (2nd Dept. 2023); *Curren*

8

[* 8]

*v. Carbonic Sys., Inc.*, 58 AD3d 1104, 1106 (3rd Dept. 2009). Furthermore, the speaker of the words, Mr. Maines, is in a position to have possession of certain facts and information as to financial and corporate details that the other attendees of the meeting might lack, so the statement was, at the very least, a mixed opinion and still potentially actionable.

The second alleged statement was that Defendant was "so f***ed up he has problems." It is up to the Court to determine, as a matter of law, if a statement is an "actionable fact [or] a protected expression of opinion." *Baker v. Galusha*, 114 AD3d 1124, 1124-1125 (3rd Dept. 2014) (citation omitted); *Mann v. Abel*, 10 NY3d 271 (2008); *Hull v. Town of Prattsville*, 145 AD3d at 1387. In *Steinhilber*, the Court noted that it is difficult to come up with a reliable set of criteria to evaluate if a statement is an opinion, but observed that there are

> four factors which should generally be considered in differentiating between fact and opinion. The four factors are: (1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Steinhilber v. Alphonse*, 68 NY2d at 292 [internal quotation marks and end citation omitted].

A court must "determine whether the reasonable listener … is likely to understand the remark as an assertion of provable fact." *Gross v. New York Times*, 82 NY2d at 155 (citations omitted). "Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable." *Dillon v. City of New York*, 261 AD2d at 38; *see, Matter of Oved & Oved LLP v. Google, LLC*, 231 AD3d 582 (1st Dept. 2024); *Wolberg v. IAI N. Am., Inc.*, 161 AD3d 468.

The alleged statement that Defendant is "f***ed up" and "has problems" is simply too broad and undefined to be provable. There is no accepted definition for the terms that were used and no way to objectively prove the assertions as true or false. *See, e.g. Matter of Oved & Oved LLP v. Google, LLC*, 231 AD3d 582 (statement that Petitioner has a rude attorney does not have precise meaning so it is not actionable); *Rivas v. Restaurant Assoc., Inc.*, 223 AD3d 634 (1st Dept. 2024) (calling plaintiff a pervert is nonactionable opinion because it is subjective); *Kerns v. Ishida*, 208 AD3d 1102 (1st Dept. 2022) (statement that plaintiff "acts like a psychotic

9

[* 9]

nutcase" and the office "is run amok" is an opinion based on negative experiences with the plaintiff's business and not actionable).

The alleged second statement attributable to Mr. Maines is degrading and insulting but is also simply conclusory, and those conclusions are not susceptible of being proven true or false. The Court concludes that the second statement is one that "the average listener would take ... to be one of opinion." *Landa v. Capital One Bank (USA), N.A.*, 172 AD3d 1052, 1054. Therefore, it is not actionable.

The third statement attributed to Mr. Maines concerns a racial epithet. Regardless of the offensive nature of the comment, "there can be no action for libel based upon opinion, expressed in the form of epithets." *Weiner v. Doubleday & Co.*, 142 AD2d at 105; *Escarza v. Evancho*, 2024 NY Misc LEXIS 4117 (Sup. Ct. New York County 2024); *see e.g. LeBlanc v. Skinner*, 103 AD3d 202 (2nd Dept. 2012). Accordingly, the Court finds that the third statement cannot be the basis for a defamation claim in this situation.

As a result of the foregoing discussion, the Court concludes that only the first statement attributed to Mr. Maines could be found defamatory and not merely opinion. The second and third statements are opinion and cannot form the basis of a defamation claim. Regarding the first statement, however, the Court must consider Plaintiff's argument that even if the statement was defamatory, it was protected by a privilege.

C. Common interest privilege

Plaintiff argues that all the alleged statements are immune from claims of defamation due to a qualified privilege emanating from the common interest of the parties to whom the statements were made. A qualified privilege is a defense to slander and shields an otherwise defamatory statement "made to persons who have some common interest in the subject matter." *Foster v. Churchill*, 87 NY2d 744, 751; *see Loughry v. Lincoln First Bank, N.A.*, 67 NY2d 369, 376 (1986); *Wilcox v. Newark Val. Cent. Sch. Dist.*, 107 AD3d 1127, 1133 (3rd Dept. 2013); *Curren v. Carbonic Sys., Inc.*, 58 AD3d 1104, 1106; *Herlihy v. Metro. Museum of Art*, 214 AD2d 250 (1st Dept. 1995).

The statements at issue here were made during a meeting of employees of Plaintiff (whether it was just managers or all employees) to discuss Defendant's departure from Maines.

10

Courts have recognized the applicability of a common interest privilege in employment settings. *See, Loughry v. Lincoln First Bank*, 67 NY2d 369 (comments made during a meeting of certain bank executives); *Boyle v. Stiefel Lab.*, 204 AD2d 872 (3rd Dept. 1994) (statements made by co-worker was subject to common interest privilege); *Misek-Falkoff v. Keller*, 153 AD2d 841 (2nd Dept. 1989) (statements made by one employee about a second employee to supervisors and members of the Personnel Department investigating a dispute fall within qualified privilege) ; *see also, Wilcox v. Newark Val. Cent. Sch. Dist.*, 107 AD3d 1127; *Cusimano v. United Health Servs. Hosps., Inc.*, 91 AD3d 1149 (3rd Dept. 2012); *Williams v. County of Genesee*, 306 AD2d 865 (4th Dept. 2003). However, in the present case, the record is not adequate for the Court to make a determination as to whether the common interest privilege applies. Defendant's Counterclaim alleges that the statements were made during a meeting of all of Plaintiff's employees, while Mr. Maines' affidavit refers to a Zoom meeting of Maines managers. This discrepancy could be significant because the scope of the privilege must be assessed in light of the circumstances. There must be some connection between the communication and the "common interest claimed." *See, e.g., Cusimano v. United Health Servs. Hosps., Inc.*, 91 AD3d 1149.

"A qualified privilege arises when a person makes a good-faith, bona fide communication upon a subject in which he or she has an interest, or a legal, moral or societal interest to speak, and the communication is made to a person with a corresponding interest." *Grier v. Johnson*, 232 AD2d 846, 847 (3rd Dept. 1996). "Statements among employees in furtherance of the common interest of the employer, made at a confidential meeting, may well fall within the ambit of a qualified or conditional privilege" (*Loughry v. Lincoln First Bank*, 67 NY2d at 376), but that does not mean that all statements made between co-employees that could be described as related to the business fall under the umbrella of the common interest privilege. The "flow of information between parties sharing a common interest should not be impeded" (*Liberman v. Gelstein*. 80 NY2d at 437) but that goal is achieved by ensuring that the communication bears some relation to the commonality of the interest. *See, Cusimano v. United Health Services Hosps., Inc.*, 91 AD3d 1149 (statements were made solely to other co-workers "all of whom were collectively responsible for the functioning and proper operation of [the health care office]"); *Misek-Falkoff v. Keller*, 153 AD2d 841 (information disseminated to a limited number of co-employees involved with investigation of the incident); *Vacca v. General Electric Credit*

*Corp.*, 88 AD2d 740, 741 (3rd Dept. 1982) (question of fact whether the statements went "beyond what was necessary to convey the message concerning the common business interest"). The information must be related to the nature of the common interest, which requires consideration of the parties involved and their common interest.

The procedural posture of this motion is significant. It is a pre-discovery motion to dismiss, so the Court cannot make findings of fact, and the record has not been developed. As a result, there is not enough evidence for the Court to define the scope of any common interest privilege. There is dispute as to who was involved in the Zoom meeting, and that information is needed before any assessment could be made concerning what common interest they shared. While all employees of a business might have certain shared interests in the success of the business, there may be some matters that would be properly limited to particular groups like management, personnel/human resources, safety, finance etc. The fact that people are co-employees does not necessarily mean that any information concerning the business is part of their shared common interest. Since the Court cannot identify the parties involved in the conversation at this juncture, the contours of any common interest cannot be ascertained, and neither can the scope of any qualified privilege. The Court is unable to determine what common interest, apart from business in general, that the purported statements served to further. Discovery is likely to produce evidence relevant to the qualified privilege, and after information has been exchanged, then it may be more appropriated for either party to seek summary judgment on the question of the qualified privilege. At present, it would be premature for the Court to reach a conclusion as to whether the alleged statement by Mr. Maines that Defendant stole from the company is protected by a common interest privilege.

The Court declines Plaintiff's invitation to convert the motion to a summary judgment motion. When "both sides make it unequivocally clear that they are laying bare their proof and deliberately charting a summary judgment course" [*Four Seasons Hotels, Ltd. v. Vinnik*, 127 AD2d 310, 320 [1st Dept. 1987]), the Court may properly convert the motion to one for summary judgment. The facts herein do not suggest the parties intended such a result. *See, Mihlovan v. Grozavu*, 72 NY2d 506 (1988). Defendant's opposition affidavits include a request for further discovery, belying any contention that Defendant has charted a course for summary judgment.

12

[* 12]

## 2. Counterclaim for prima facie tort/corporate espionage

"'To sufficiently allege a cause of action for prima facie tort . . . a plaintiff must plead the intentional infliction of harm without justification or excuse, which results in special damages, by one or more acts which would otherwise be lawful.'" *Wiggins & Kopko, LLP v. Masson*, 116 AD3d 1130, 1131 (3rd Dept. 2014), *quoting Cavanaugh v. Doherty*, 243 AD2d 92, 101 (3rd Dept. 1998). The action "must be a malicious one unmixed with any other and exclusively directed to injury and damage of another.'" *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 NY2d 314, 333 (1983), *quoting Beardsley v. Kilmer*, 236 NY 80, 90 (1923).

The gravamen of the Counterclaim for prima facie tort/corporate espionage is that an employee of Plaintiff went to work for BLJR, misappropriated BLJR's customer list and then returned to work for Plaintiff. Defendant alleges that the employee's actions were done at Plaintiff's direction, and "were done maliciously with the intention to inflict harm on Hurlburt." (Defendant's Answer at ¶ 78.)

The claim for prima facie tort cannot stand because it fails to allege that the "conduct was motivated solely by malice." *Ripka v. County of Madison*, 162 AD3d 1371, 1373 (3rd Dept. 2018); *Wiggins & Kopko, LLP v. Masson*, 116 AD3d 1130 (malevolence must be the sole motive for the act); *Cusimano v. United Health Servs. Hosps., Inc.*, 91 AD3d 1149; *Morrison v. Woolley*, 45 AD3d 953 (3rd Dept. 2007). It is not enough that malice may have been one of the reasons, it must be the sole reason. Defendant's Counterclaim lacks that allegation or information to support such a conclusion.

In addition, a claim for prima facie tort requires "a particularized statement of the reasonable, identifiable and measurable special damages" to the injured party. *Constant v. Hallmark Cards, Inc.*, 172 AD2d 641, 642 (2nd Dept. 1991); *see, Butler v. Delaware Otsego Corp.*, 203 AD2d 783 (3rd Dept. 1994). Unlike defamation claims, where damages may be presumed in some instances that constitute defamation *per se*, there is no corresponding replacement in prima facie tort. The second Counterclaim is based on the employment and possible misappropriation of BLJR's customer list and is not based upon any alleged defamatory statements. Defendant's second Counterclaim for prima facie tort does not allege special damages and must be dismissed on that basis as well.

[* 13]

Defendant has also added a claim for "corporate espionage" in its second Counterclaim dealing with the unfaithful employee. However, Defendant has not provided any opposition with respect to the motion to dismiss that Counterclaim. Thus, Defendant has waived that Counterclaim. In any event, corporate espionage would be a claim belonging to the company and not to Defendant individually. Accordingly, that part of the second Counterclaim cannot stand.

As noted above, Defendant has withdrawn its third Counterclaim based on "hostile workplace". Therefore, the Court is dismissing that Counterclaim with prejudice.

## CONCLUSION

Based on all the foregoing, the Court concludes that: the second and third alleged statements of the defamation Counterclaim are not actionable because they are opinions and/or loose, figurative statements; but the first statement could sustain a claim for defamation and the Court cannot determine, at this time, if the statement would be protected by the common interest qualified privilege. The Court further finds that the second Counterclaim for prima facie tort does not contain any allegations that it was motivated solely by malice, or that Defendant suffered any special damages, or that he has standing to raise an issue of corporate espionage. Accordingly, based on all the foregoing and after due deliberation, it is hereby

ORDERED, that Plaintiff's motion to strike the Defendant's First Counterclaim is GRANTED WITH RESPECT TO THE SECOND AND THIRD STATEMENTS, BUT DENIED REGARDING THE FIRST STATEMENT; and it is further

ORDERED, that Plaintiff's motion to strike Defendant's Second and Third Counterclaims is GRANTED.

THIS CONSTITUTES THE DECISION AND ORDER OF THIS COURT.

Dated:      March 10, 2025
            Binghamton, New York

_____
HON. EUGENE D. FAUGHNAN
Supreme Court Justice

14

[* 14]