[979 NYS2d 58]

A. Bernard Frechtman, Esq., Appellant, v Allen Gutterman et al., Respondents.

First Department, January 23, 2014

## APPEARANCES OF COUNSEL

*Diane Kaplan*, Briarcliff Manor, for appellant.
*A. Bernard Frechtman*, New York City, appellant pro se.
*Brian H. Bluver*, New York City, for respondents.

## OPINION OF THE COURT

SAXE, J.

Where a client sends a letter to its attorney terminating the representation and complaining that the attorney's representation was inadequate or constituted misconduct or malpractice, may the attorney sue the client for defamation?

Plaintiff, A. Bernard Frechtman, a practicing attorney for more than 60 years, brought this action against his former clients for defamation, alleging that three letters signed by defendant Allen Gutterman, each of which terminated Frechtman's employment as attorney in a particular named matter,

contained defamatory statements. The relied-on statements include: "We do not believe you adequately represented our interest," "We believe your failure to act in our best interest in reference to certain matters upon first engaging in the matter may equate to misconduct, malpractice, and negligence," "We believe that your future representation on this matter only became necessary, as a result of mistakes and oversights made by you acting as counsel," and "[W]e believe that we should not pay for the value of services for which any misconduct or counsel oversight relates to the representation for which fees are sought."

Defendants moved to dismiss the complaint, and the motion court granted the motion (2013 NY Slip Op 33558[U] [2013]). For the reasons that follow, we affirm.

Defamation is the making of a false statement about a person that "tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him [or her] in the minds of right-thinking persons, and to deprive him [or her] of their friendly intercourse in society" (*Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369, 379 [1977], *cert denied* 434 US 969 [1977]). "The elements are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se" (*Dillon v City of New York*, 261 AD2d 34, 38 [1st Dept 1999]). A statement is defamatory on its face when it suggests improper performance of one's professional duties or unprofessional conduct (*Chiavarelli v Williams*, 256 AD2d 111, 113 [1st Dept 1998]).

Defendants contend that the complained-of statements are not actionable because they amount to opinion rather than fact, and because they are, in any event, protected by both absolute and qualified privileges. Plaintiff contends that the contents of the letters include false and malicious statements of facts, or expressions of opinion that imply they are supported by undisclosed facts, that constitute defamation per se because they disparage him in his profession. He contends further that based on his allegation that the letters were typed at Gutterman's direction by a person or persons employed by defendants, the requirement of publication of the defamatory statements to a third party is satisfied.

It is true that the complained-of statements disparage plaintiff in his profession.

They may therefore constitute defamation if they amount to false statements of fact, rather than opinion, if they were published to a third party, and if they are not protected by a privilege.

■ Initially, the complaint cannot be dismissed on the strength of the publication requirement. While it would seem reasonable to conclude that a company employee assigned to prepare such a letter would not constitute a third party for purposes of the publication requirement, Court of Appeals precedent supports plaintiff's position asserting that, in the context of a dismissal motion, the publication requirement may be satisfied by the allegation that the document's contents were revealed to such a company employee. In particular, in *Ostrowe v Lee* (256 NY 36 [1931]), Chief Judge Cardozo explained that where it is alleged that the defendant dictated a defamatory letter to his stenographer, who transcribed the notes, and the letter was then sent to the plaintiff, publication to a third party is sufficiently pleaded (*see Hirschfeld v Institutional Inv.*, 208 AD2d 380 [1st Dept 1994]).

■ The motion court correctly concluded that the complained-of statements are nonactionable expressions of opinion, rather than assertions of fact (*see Guerrero v Carva*, 10 AD3d 105, 111-112 [1st Dept 2004]). To determine whether the challenged statements are nonactionable opinion or assertions of fact,

> "[t]he factors to be considered are: (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to 'signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact' " (*see Brian v Richardson*, 87 NY2d 46, 51 [1995] [internal quotation marks omitted], quoting *Gross v New York Times Co.*, 82 NY2d 146, 153 [1993]).

Of course, words that sound like an opinion may be actionable where the statement "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it" (*Steinhilber v Alphonse*, 68 NY2d 283, 289 [1986]). "The actionable element of a 'mixed opinion' is not the false opinion

itself—it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking" (*id.* at 290).

It is most important to "look[ ] at the content of the whole communication, its tone and apparent purpose," rather than "first examin[ing] the challenged statements for express and implied factual assertions, and find[ing] them actionable unless couched in loose, figurative or hyperbolic language in charged circumstances" (*Immuno AG. v Moor-Jankowski*, 77 NY2d 235, 254 [1991], *cert denied* 500 US 954 [1991]).

Considering the full content of the statements at issue here, including their "tone and . . . apparent purpose" (*Steinhilber*, 68 NY2d at 293), their broader context and their surrounding circumstances, the challenged statements are better understood as opinion than as fact. We come to this conclusion not because the statements are preceded by the phrase "We believe," but because of the context in which they were made. "[E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole" (*Steinhilber*, 68 NY2d at 294 [internal quotation marks omitted]; *see also Thomas H. v Paul B.*, 18 NY3d 580, 584-585 [2012]; *Immuno AG.*, 77 NY2d at 254). While the use of words such as "misconduct" and "malpractice" may, viewed in isolation, seem to be assertions of provable fact, or claims supported by unstated facts, viewed in their context, these statements amount to the opinions and beliefs of dissatisfied clients about their attorney's work.

██ ██ Even assuming the letters contain defamatory statements of fact, they are protected by both absolute and qualified privilege. An absolute privilege applies when the challenged communication was made by an individual participating in a public function, such as executive, legislative, judicial or quasi-judicial proceedings (*Rosenberg v MetLife, Inc.*, 8 NY3d 359, 365 [2007]). Defendants, in claiming the right to an absolute privilege, rely on the rule that "[i]n the context of a legal proceeding, statements [made] by parties and their attorneys are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation" (*Grasso v Mathew*, 164 AD2d 476, 479 [3d Dept 1991], *lv dismissed* 77 NY2d 940 [1991], *lv denied* 78 NY2d 855 [1991]). Although the rule refers to

"proceeding[s] in court or . . . before an officer having attributes similar to a court" (*Toker v Pollak*, 44 NY2d 211, 219 [1978] [internal quotation marks omitted]), the concept of statements in the course of judicial proceedings has been treated as embracing letters between litigating parties and their attorneys, relating to litigation (*see Silverman v Clark*, 35 AD3d 1, 12 [1st Dept 2006]; *Grasso v Mathew*, 164 AD2d at 479).

Indeed, this Court has explained that a letter sent by a client to his or her attorney discharging the attorney is absolutely privileged:

> "The absolute privilege is not limited to statements made on the record during oral testimony or argument, or set forth in formal litigation documents, such as pleadings, affidavits, and briefs. In the interest of 'encourag[ing] parties to litigation to communicate freely in the course of judicial proceedings' (*Grasso*, 164 AD2d at 480), the privilege is extended to all pertinent communications among the parties, counsel, witnesses, and the court. Whether a statement was made in or out of court, was on or off the record, or was made orally or in writing, the rule is the same—the statement, if pertinent to the litigation, is absolutely privileged" (*Sexter & Warmflash, P.C. v Margrabe*, 38 AD3d 163, 174 [1st Dept 2007]).

Keeping in mind "the public policy to permit persons involved in a judicial proceeding to write and speak about it freely among themselves" (*id.* at 172), this Court in *Sexter & Warmflash* determined that a letter sent by a client to his attorney, discharging the attorney as counsel, is absolutely privileged as "a letter among parties and counsel on the subject of pending or prospective litigation" (*id.* at 174). That ruling is equally applicable here. Although releasing such a letter or its contents to unrelated third parties could affect the availability of the privilege, here, as in *Sexter & Warmflash*, there is no claim that either the letter or its contents was released or published to any unrelated third party.

Even if the absolute privilege were inapplicable, the statements contained in defendants' letters would be subject to a qualified privilege as communications upon a subject matter in which both parties had an interest (*see Shapiro v Health Ins. Plan of Greater N.Y.*, 7 NY2d 56, 60 [1959]). "The shield provided by a qualified privilege may be dissolved if plaintiff can

demonstrate that defendant [made the statement] with 'malice,' " which may mean either spite or ill will, or knowledge that the statement was false or made in reckless disregard of its truth or falsity (*Liberman v Gelstein*, 80 NY2d 429, 437-438 [1992]). The statement must have been made with a proper purpose, and publication must be in a proper manner and to proper parties only (*Blackman v Stagno*, 35 AD3d 776, 778 [2d Dept 2006], *lv dismissed* 8 NY3d 938 [2007]; *see also* 43A NY Jur 2d, Defamation and Privacy § 120).

A client's letter to an attorney terminating the attorney's services and explaining the client's perceived grounds for the termination qualifies as a communication on a subject in which sender and recipient have a shared interest. Where the letter is sent only to the attorney, and access to its contents is limited to the recipient and the defendant (which includes any of defendant's employees who assisted in its preparation), proper publication is established as a matter of law. Plaintiff's bare allegations of malice are insufficient to prevent dismissal on this ground.

"The threat of being put to the defense of a lawsuit . . . may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself" (*Washington Post Co. v Keogh*, 365 F2d 965, 968 [DC Cir 1966], *cert denied* 385 US 1011 [1967]). As a matter of public policy, which should protect open and honest communication between attorneys and their clients, clients must be permitted to make such claims, or complaints, directly to their attorneys, and to their attorneys alone, without threat of a lawsuit.

Accordingly, the order of the Supreme Court, New York County (Saliann Scarpulla, J.), entered June 6, 2013, which granted defendants' motion to dismiss the complaint, should be affirmed, without costs.

Mazzarelli, J.P., Acosta, Richter and Feinman, JJ., concur.

Order, Supreme Court, New York County, entered June 6, 2013, affirmed, without costs.