Cahn v Chapler (2026 NY Slip Op 50029(U))

[*1]

Cahn v Chapler

2026 NY Slip Op 50029(U)

Decided on January 9, 2026

Supreme Court, New York County

Ramseur, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 9, 2026
Supreme Court, New York County

Brian Cahn, Plaintiff,

againstElyssa Hirmes Chapler, David Chapler, Defendant.

Index No. 158746/2023

Plaintiff Richard Altman, Esq., of The Law Office of Richard AltmanDefendants Mark Berman, Esq. of Rosa Berman & Bulbulia LLP 

Dakota D. Ramseur, J.

The following e-filed documents, listed by NYSCEF document number (Motion 004) 44, 45 were read on this motion to/for DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 005) 56, 57, 58, 59, 60 were read on this motion to/for DISMISS.
In September 2023, plaintiff Brian Cahn commenced this defamation action against defendants Elyssa Hirmes Chapler and David Chapler based primarily upon multiple statements that Elyssa posted to her Instagram account that accused plaintiff, her ex-husband, of having an affair. In motion sequence 005, defendants move to dismiss plaintiff's causes of action for defamation, defamation per se, and intentional infliction of emotional distress pursuant to CPLR 3211 (a) (7). The motion is opposed. For the following reasons, defendants' motion is granted in part and denied in part.BACKGROUNDPlaintiff Brian Cahn is a licensed New York State physician who works at Memorial Sloan Kettering Cancer Center and, in July 2024, married Jayme Chapler (nee Dachs). Jayme Chapler is defendant David Chapler's ex-wife, who divorced in September 2022. After their divorce, David Chapler married Elyssa Hirmes Chapler in August 2023. In his amended complaint, plaintiff alleges that Elyssa made posts on three separate days—January 20, 2023, [*2]September 1, 2023, and September 2, 2023—in which she accused him of having an affair with Jayme while she was married to David and while Jayme's father was a patient in critical condition at Memorial Sloan Kettering. The posts were published to her account with approximately 12,000 followers. The specific posts are as follows. On January 23, Elyssa wrote:
"Evil acts always find a way to come to the light, including individuals who engaged in evil to violate the code of medical ethics . . . And I'm not afraid to report them so that they lose their license to practice after the disgusting acts engaged in . . . in the presence of children." (NYSCEF doc. no. 47 at ¶14, amended complaint; NYSCEF doc. no. 48, 1/20/23 Instagram post.)
On September 1, 2023, she posted:
"In this blissful moment on our honeymoon, I'd like everyone to know that I clearly have insinuated I am no longer avoiding to call [sic] things out. It should be very clear that I am done keeping quiet... Jayme, who just got engaged during our wedding to her ex from high school (Brian Cahn) who she had an affair with while her father (who we all knew well and loved) was on his death bed while brian [sic] was working at the hospital and utilized this as an opportunity to pursue a married woman with 2 kids and a father dying of cancer (which I'm pretty is [sic] a major violation of the medical code of ethics)." (Id.; NYSCEF doc. no. 49, 9/1/23 Instagram post.)
And on September 2, 2023, after reposting the above message, she wrote, "said 'mother' [Jayme] was too busy in Italy with her boyfriend—the one she destroyed her family for and has been with since she cheated on her husband with him." (Id.; NYSCEF doc. no. 50. 9/3/23 Instagram post.)
As to David Chapler, plaintiff alleges that he wrote several defamatory emails on or about December 30, 2022, to Jayme, including where he said, "Lol-maybe I should report Brian? Definitely not ethical what he did . . . " and "Lol—you [Jayme] had an affair with your ex-boyfriend . . . You are still with the guy who was on your dad's medial [sic] team that you cheated on me with—talk about breaking ethics." (NYSCEF doc. no. 47 at ¶¶33-34.) On April 24, 2024, David Chapler also referred to plaintiff's travel arrangements with his and Jayme's daughter as "illegal" and an "abduction" and made reference to having called United Airlines and "United confirmed that if [plaintiff] showed up at there [sic] 9 something she [the daughter] would not have been allowed on." (Id. at ¶¶38-40.)
Plaintiff does not deny that he had the affair to which Elyssa and David refer, only that this affair did not take place while Jayme's father was a patient in the hospital that plaintiff worked in. (NYSCEF doc. no. 41 at ¶ 17.) Accordingly, because it did not occur while he was treating Jayme's hospital, plaintiff alleges that these publications falsely imputed unethical medical conduct, which threatened his license and caused reputational, emotional, and economic harm, including losing a business partner in a proposed joint venture. (See NYSCEF doc. no. 22, Justin Silver email "pausing a medspa plan"; see also NYSCEF doc. no. 19, Silver notarized letter to plaintiff's counsel.)
In moving to dismiss for failure to state a cause of action, defendants contend that Elyssa Chapler's Instagram posts are non-actionable expressions of opinion and do not fit within the narrow class of statements that can be considered defamation per se. In their view, the references to an "affair," "evil," and "disgusting acts" should be understood in their surrounding context as [*3]subjective characterizations rather than statements of fact. Further, the allegations against David Chapler, they maintain, are protected by the "common-interest privilege" as his accusations that plaintiff abducted and kidnapped his child were made through a private platform and not broadcast to the public at large. Lastly, they contend that the causes of action against David Chapler (which were asserted for the first time in plaintiff's amended complaint dated April 4, 2025) are time-barred by New York's one-year statute of limitations for defamation given that the statements were made in 2022, or more than two years after plaintiff amended his complaint to include him as a defendant for the first time. 
By contrast, plaintiff maintains that each of Elyssa's three posts contain factual assertions that are capable of being true—specifically, the portions alleging he had an affair and that this conduct violated medical ethics codes—and that the common-interest privilege does not apply to protect David Chapler where the comments were made in bad faith or with intent to harm. As addressed below, while the motion to dismiss against Elyssa Chapler must be denied in part, plaintiff has failed to state a cause of action against David Chapler.

 DISCUSSION
On a motion to dismiss pursuant to CPLR 3211(a)(7), the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." (Leon v Martinez, 84 NY2d 83, 87-88 [1994].) A court's inquiry is limited to assessing the legal sufficiency of the plaintiff's pleadings—that is, whether or not the facts set forth by the plaintiff sufficiently apprise the court and the defendants of the transactions and/or occurrences that make up the material elements of a cause of action. (See CPLR 3013.) Accordingly, the Court's only function is to determine whether the facts as alleged fit within a cognizable legal theory. (JF Capital Advisors, 25 NY3d at 764.)
Whether Challenged Statements Are FactualDefamation is defined as the making of a false statement of fact which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace. (Sandals Resorts Intl. Ltd. v Google, Inc., 86 AD3d 32, 38 [1st Dept 2011].) Since falsity is a sine qua non of a libel claim and since only assertions of fact are capable of being true, a defamation claim cannot be maintained unless it is premised on published assertion of fact rather than on assertions of opinion. (Id.; Davis v Boeheim, 24 NY3d 262, 268 [2014].) To determine whether a reasonable reader would consider a statement as factual in nature as opposed to a protected opinion, courts apply a three-part test, assessing: (1) whether the statement has a precise meaning which is readily understood, (2) whether it is capable of being proven true or false, and (3) whether the full social context of the statement signals to the reader the intent to convey actual facts. (Davis v. Boeheim, 24 NY3d 262, 269—70 [2014].)
In contrast to a factual statement, a "pure" opinion may take two forms: either (1) where the opinion is accompanied by a recitation of the facts upon which it is based, or (2) absent a factual recitation, an opinion that does not imply that it is based on undisclosed facts. (Id. at 269.) Regardless of how unreasonable or vituperative an opinion may be, one is never actionable. (See Steinhilber v. Alphonse, 68 NY2d 283, 289 [1986].) However, a "mixed" opinion is an opinion that implies it is based on facts not disclosed to the audience. (Stega v New [*4]York Downtown Hosp., 31 NY3d 661, 674 [2018].) Such statements are actionable not because they convey a false opinion, but because a reasonable reader may infer that the speaker knows undisclosed facts that justify the opinion and are damaging to the subject. (See Gross, 82 NY2d at 153—54; Guerrero v. Carva, 10 AD3d 105, 112 [1st Dept 2004].)
Here, Elyssa's post dated January 23, 2023, in which she refers to or accuses plaintiff of "evil" and or "disgusting" acts that violate the Code of Medical Ethics, is clearly unactionable: neither "evil" nor "disgusting" are capable of a precise meaning that is readily understood and, in this context, "violating the Code of Medical Ethics" can refer to an entire range of conduct that is no more specific than "evil" or "disgusting." (See Thomas H. v Paul B., 18 NY3d 580, 584 [2012] [finding that to constitute a statement of fact, the words must have a precise meaning, capable of being proven true or false, and whether they are likely to be understood by the listener to be opinion].)[FN1]
 However, the statements made in Elyssa's second and third posts from September 1 and 3, 2023, are more particular, i.e., that plaintiff had affair with Jayme while her father was dying at Memorial Sloan Kettering and that this conduct was what constituted a violation of a medical Code of Ethics. In contrast to "evil" and "disgusting," these statements of fact do have a precise meaning that can be proven false, i.e., that plaintiff did not engage in an affair, or at least not while Jayme's father was a patient, and that no ethical code was compromised. While defendants may be correct that, ordinarily, a statement concerning an affair does not necessarily tend to injure another in his or her trade, business, or profession (see Matter of Konig v CSC Holdings, LLC, 112 AD3d 934, 935 [2d Dept 2013]), this ignores the fact that plaintiff directly connected the affair to a Code of Ethics that bounds medical professionals, a Code of Ethics which indeed contains guidelines against romantic or sexual interactions between doctors and third-parties "whose decisions directly affect the health and welfare of the patient." (See NYSCEF doc. no. American Medical Association Code of Ethics, Chapter 9, Section 1.2, entitled "Romantic or Sexual Relationship with Key Third-Parties.") Under these circumstances, Elyssa's statements do reflect upon plaintiff's profession. Accordingly, plaintiff's cause of action for defamation per se—to the extent it is premised on Elyssa's allegation of unprofessional conduct—cannot be dismissed. (Frechtman v Gutterman, 115 AD3d 102, 104 [1st Dept 2014] ["A statement is defamatory on its face when it suggests improper performance of one's professional duties or unprofessional conduct.]")
As to plaintiff's infliction of emotional distress claim, to properly plead such a claim, plaintiff must allege (1) extreme and outrageous conduct, (2) an intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between the conduct and injury, and (4) severe emotional distress. (Chanko v American Broadcasting Cos. Inc., 27 NY3d 46, 56 [2016]; Cohn-Frankel v United Synagogue of Conservative Judaism, 246 AD2d 332, 332 [1st Dept 1998]) In Chanko, the Court of Appeals described the level of conduct necessary to satisfy the outrageousness element as one that is "so extreme in degree, as to go [*5]beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Id., citing Howell v New York Post Co., 81 NY2d 115, 121 [1993] [explaining the "price of flexibility in redressing utterly reprehensible behavior is that the "requirements of the [tort] are rigorous and difficult to satisfy."].) A person may recover only where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation. (Owen v Leventritt, 174 AD2d 471, 472 [1st Dept 1991]; see also Petty v Law Off. Of Robert Santoriella, P.C., 200 AD3d 621, 622 [1st Dept 2021].) Simply put, Elyssa's posts to her Instagram account—three over a nine-month period—do not qualify as extreme and outrageous conduct that goes beyond all bounds of decency.
Plaintiff's Defamation Cause of Action Against David ChaplerNeither party disputes that the defamation claims asserted against David Chapler, without applying the relation-back doctrine, would otherwise be time-barred by CPLR 215 (3)'s one-year limitation period. In opposition to the motion, plaintiff argues that the relation-back doctrine applies because (1) claims against David Chapler arise out of the same conduct, transaction, or occurrences as those against Elyssa Chapler, (2) David Chapler can be charged of notice of the institution of this action and will not be prejudiced in having to maintain a defense on its merit, and (3) David Chapler new, or should have known, that but for an excusable mistake as to the identity of the proper parties, the action would have been brought against him as well as Elyssa. In his view, each of the three prongs cited in Buran v Coupal (87 NY2d 173 [1995]) have been met such that his defamation cause of action against David Chapler should be deemed timely.
As defendants argue, though, Buran requires plaintiff to have made a mistake in failing to include him in the original complaint. (Id. at 181 ["When a plaintiff intentionally decides not to assert a claim against a party known to be potentially liable, there has been no mistake and the plaintiff should not be given a second opportunity to assert that claim after the limitations period has expired].") Yet, as plaintiff asserts in his opposition, David Chapler was not made a party to this action at its commencement "solely because of plaintiff's desire not to unduly inflame the tensions, the strong preference for simply trying to seek the cessation of the defendants' conduct, [and] to protect the plaintiff's wife's (and David Chapler's) children from further damage to their private lives." In other words, regardless of motivation, plaintiff's opposition admits that the failure to assert causes of action against David Chapler was a "strategic," intentional choice and not due to a failure to identify the proper party or a mistake made in naming the proper party. (Matter of Nemeth v K-Tooling, 40 NY3d 405, 411 [2023] [recognizing that claims against a later-added party relate back to the date of commencement if the new party knew that, but for an excusable mistake by the plaintiff as to the identity of the proper parties, the action would have been commenced against them as well].) Further, as the Court of Appeals explained in Buran, the primary consideration in applying the doctrine is "whether the defendant could have reasonably concluded that the failure to sue within the limitation period meant that there was no intent to sue that person at all and that the matter has been laid to rest." (Buran, 87 NY2d at 181 [emphasis original], quoting Brock v Bua, 83 AD2d 61, 70 [2d Dept 1981].) Here, plaintiff's opposition provides no reason why defendant David Chapler would not reasonably conclude that he had waived any claim against him. Accordingly, the Court finds that the relation-back doctrine does not apply to save this claim.
Plaintiff's defamation claim against David Chapler would also be subject to dismissal [*6]under the common-interest privilege. New York courts have long recognized that the public interest may be served by shielding certain communications from litigation even though they may possibly be defamatory. (Liberman v Gelstein, 80 NY2d 429, 437 [1992].) Where the public interest is deemed to be of lesser importance, a conditional—as opposed to an absolute—privilege exists. (Id.) One such privilege is the common interest privilege, which exists where the "communication [is] made by one person to another upon a subject in which both have an interest." (Id.) Here, plaintiff does not dispute that the emails referred to in his complaint were sent to Jayme on December 30, 2022, and April 24, 2024 (reiterated, later, on February 3, 2025) through the parties' private, court-mandated app "OurFamilyWizard" and that the statements contained therein were not published to the wider public. Moreover, in the context of this dispute, David Chapler, Jayme, and plaintiff all shared a common interest in the welfare of David and Jayme's children, including the parameters of Jayme's custody rights and David's visitation rights. As such, because David Chapler referred to plaintiff's travel with their children as "illegal" and an "abduction" within the confines of a private app between the parties, the Court finds that the privilege protects these communications.[FN2]
 This conclusion is one that plaintiff's opposition does not dispute (see NYSCEF doc. no. 58 at 5); rather, plaintiff contends that this privilege can be overcome through a showing of malice, i.e., by showing David Chapler made the statements knowing they were false or motivated by spite or ill will (Landon v Kroll Specialists, Inc., 22 NY3d 1, 13 [2013]). However, while plaintiff cites the malice standard, his opposition is entirely bereft of caselaw on this point, so much so that it is unclear what the basis would be for the Court finding that David Chapler made the statements in "bad faith."
Accordingly, for the foregoing reasons, it is hereby
ORDERED that defendants' motion to dismiss pursuant to CPLR 3211 is granted as to plaintiff's cause of action for intentional infliction of emotional distress, plaintiff's cause of action for defamation against defendant David Chapler, and plaintiff's defamation cause of action against Elyssa Chapler to the extent that plaintiff's defamation cause of action is premised on the January 20, 2023, but otherwise denied; and it is further
ORDERED that counsel for defendants shall serve a copy of this order, along with notice of entry, on all parties within ten (10) days.
This constitutes the Decision and Order of the Court.
DATE 1/9/2026DAKOTA D. RAMSEUR, J.S.C.

Footnotes

Footnote 1:Although neither party has raised this issue, the person and conduct referred to in the January 23, 2023 post becomes clear when viewed in conjunction with Elyssa's later posts that specifically identify plaintiff and Jayme. The January 23, 2023 post itself (published eight months before the others) only refers to an "unnamed person" who has engaged in the evil and disgusting acts. Identifying details of this person are limited to the fact that this unnamed individual may be a mutual friend with some of her followers and that they are a doctor (by

Footnote 2:Though defendants do not raise the issue, it is unclear how the emails sent to Jayme through the private app caused reputational, emotional, and economic harm to plaintiff.